UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------------------------------------------------------X
STRATEGIC TECHNOLOGIES, )
    PTE, LTD., )
     )
        Plaintiff, )
     )   Civil Action No. 05-2311
    v. )   Judge: Rosemary M. Collyer
     )
REPUBLIC OF CHINA (TAIWAN), )
     )
        Defendant. )
------------------------------------------------------X

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Strategic Technologies, PTE, Ltd. ("Strategic Tech") respectfully submits this memorandum of law in opposition to the Defendant's Motion to Dismiss.

### OVERVIEW AND RELEVANT FACTS

The complaint in this case (the "Complaint") seeks recognition of a judgment entered in the Singapore courts (the "Judgment")[1] under D.C. law. (See Complaint, ¶¶ 6-8, 10-20). The Judgment arose out of a commercial transaction between an organ or agency of the Defendant here, the Republic of China ("ROC") and Strategic Tech. (Complaint, ¶¶ 1, 2, 8). The contract underlying this judgment (the "Contract"),[2] contained a provision by which the ROC agreed to arbitrate all disputes under the contract pursuant to normal commercial arbitration rules. (See Contract, Schirmer Decl., Exh. A., Article 25). More specifically, the Contract provided that should the ROC initiate arbitration proceedings under the contract, such proceedings – whether the dispute

---

[1] A copy of the Judgment was submitted to the Court as an Exhibit to the Complaint.

[2] The contract is part of Exhibit A to the Declaration of Mark J. Schirmer, executed on May 12, 2006 ("Schirmer Decl."). In the Exhibit, it follows authenticating affidavits filed in the Singapore courts.

involved the ROC's obligations or Strategic Tech's – could occur outside the ROC in accordance with the foreign state's arbitration laws. (*See id.*, Sections 25.2 and 25.4). Further, the Contract provided that any arbitration award entered would be "final and binding" on the ROC. (*Id.*, Section 25.4). The Contract was submitted to the Singapore courts (*See* Schirmer Decl. Exh. A), and eventually the Judgment was entered for Strategic Tech and against the ROC.

## LEGAL ARGUMENT

### I.   THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THIS ACTION

The ROC claims that this Court lacks subject matter jurisdiction because the ROC is entitled to claim sovereign immunity from the claims in this suit under the provisions of the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611 (the "FSIA"). The ROC is wrong.

The FSIA sets forth the framework for determining when a federal or state court may exercise jurisdiction over a foreign state. The FSIA authorizes a foreign plaintiff, like Strategic Tech, to sue a foreign sovereign in federal court in the U.S. "provided the substantive requirements of the Act are satisfied ... and grants federal district courts subject matter jurisdiction over *in personam* civil claims with respect to which the defendant foreign state is not entitled to immunity under 28 U.S.C. §§ 1605-1607." *Gulf Resources America, Inc. v. Republic of the Congo*, 370 F.3d 65, 70 (D.C. Cir. 2004). In general, under the FSIA, federal courts have subject matter jurisdiction over suits against foreign sovereigns, their agencies and instrumentalities when foreign governments engage in activities that either do not merit or waive their sovereign immunity. As it relates to this case, the FSIA provides, in relevant part, that:

2

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case —
>
>> (1) in which the foreign state has waived its immunity either explicitly or *by implication*, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver;
>> (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;

28 U.S.C. § 1605(a) (emphasis added).

In order to prevail on its claim of sovereign immunity, the ROC will bear the burden of proving that it is immune from suit. Put differently, to establish that this Court lacks subject matter jurisdiction over this suit because the ROC has sovereign immunity, the ROC has the burden of proving that the exceptions to immunity that Strategic Tech identifies do not apply in this case. *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1131-32 (D.C. Cir. 2004); *Gulf Resources America, Inc. v. Republic of the Congo*, 370 F.3d at 70; *see, e.g., L'Europeene de Banque v. La Republic de Venezuela*, 700 F. Supp. 114, 119 (S.D.N.Y. 1988) ("Under the FSIA, defendants bear the evidentiary burden of demonstrating that the exceptions are not applicable" once those exceptions have been identified and a prima facie support for their applicability has been made).

A.   <u>The Arbitration Agreement Under the Contract Waives the ROC's Sovereign Immunity.</u>

This case arises out of a commercial transaction between an organ or agency of the Republic of China and Strategic Tech, and a Judgment entered pursuant to the Contract outlining the obligations of the parties. (Complaint, ¶¶ 1, 2, 8). In the Contract

3

the ROC agrees that if an arbitration proceeding is initiated by Strategic Tech against the ROC, Taiwan's Commercial Arbitration Act – the normal rules of commercial arbitration – will apply to the arbitration of the dispute. (Contract, Section 25.2). But the Contract does not merely provide for arbitration in Taiwan under normal commercial arbitration law and rules. In addition, the Contract provides that should the ROC initiate arbitration proceedings under the Contract, such proceedings would occur outside the ROC – in the "Seller's" jurisdiction in accordance with the laws of the seller's jurisdiction. (Contract, Section 25.2). Further, wherever the arbitration is conducted, the ROC agreed that the results of any such proceeding would be final and binding as to both parties – i.e., that the ROC would be bound according to the normal rules for enforcement of judgments and arbitration awards. (Contract, Section 25.4). These provisions, taken together, constitute a waiver of the ROC's sovereign immunity.

In general, courts have found that three situations justify a finding that a government has waived sovereign immunity with respect to the issues underlying the litigation. Circumstances justifying a finding that a state has waived its sovereign immunity include situations where: (a) a foreign state has agreed to arbitration in another country, (b) a foreign state has agreed that the law of a particular country should govern a contract, and (c) a foreign state has filed a responsive pleading in an action without raising the defense of sovereign immunity. *See Lafarge Canada, Inc. v. Bank of China*, 2000 U.S. Dist. Lexis 14253 (S.D.N.Y. 2000); H.R. Rep. No. 1487, 94th Cong., 2d Sess. 18, *reprinted in* 1976 U.S. Code Cong. & Admin. News 6604, 6617. While the provision of the FSIA allowing courts to find implied waivers of sovereign immunity is construed narrowly, normally when a foreign state engages in these activities, its intent to waive

sovereign immunity is "unmistakeable." *See Shapiro v. The Republic of Bolivia*, 930 F.3d 1013, 1017 (2d Cir. 1991). Here, the arbitration provision in the Contract did not merely provide for arbitration of the dispute in the ROC and/or outside the ROC. It specifically stated that normal "Commercial Arbitration Act" rules would apply to any arbitrations brought in the ROC and that the laws of the Seller's country would apply to any arbitration occurring there. Further, the ROC explicitly agreed that the results of any such arbitration would "be final and binding," unmistakably committing itself to be treated as a normal commercial party. These circumstances, taken together, show an unmistakable intent to waive sovereign immunity and to allow the ROC to be treated like any other commercial party with respect to its rights and obligations under the Contract, thus waiving sovereign immunity. *See Birch Shipping Corporation v. Embassy of the United Republic of Tanzania*, 507 F. Supp. 311, 312 (D.D.C. 1980); *see also Seetransport Wiking Trader Schiffarhtsgesellschaft Mbh & Co., Kommanditgesellschaft v.. Navimpex Centrala Navala*, 989 F.2d 572 (2d Cir. 1993) (where a party agreed to arbitration that would be enforceable under the Convention on the Enforcement of Arbitral Awards, it waived sovereign immunity); *M.B.L International Contractors, Inc. v. Republic of Trinidad and Tobago*, 725 F. Supp. 52 (D.D.C. 1989) (same).[3]

      B.    **The Court has Subject Matter Jurisdiction Pursuant to 28 U.S.C. 1605(a)(2), the Commercial Activity Exception.**

As noted above, 28 U.S.C. § 1605 identifies particular categories of cases in which sovereign immunity is not available, including those "in which the action is based

---

[3] The ROC, while no longer formally a party to the Convention on the Recognition of Foreign Arbitral Awards (because of the political recognition of the People's Republic of China, which is a party), apparently continues to apply it as law and recognizes the terms of the Convention. *See* http://www1.fidic.org/resources/contracts/icc_apr04/icc26_pierre_a_karrer.asp, fn.4.

upon a commercial activity with a nexus to the United States." *Owens v. Republic of Sudan*, 374 F. Supp.2d 1, 10 (D.D.C. 2005). Thus, the key in determining whether the exemption of Section 1605(a)(2) applies is that a plaintiff's grievance – the cause of action – must have a nexus or relationship with the defendant's commercial activity in the United States. *See America West Airlines, Inc. v. GPA Group, Ltd*, 877 F.2d 793, 796 (9th Cir. 1989); *Shapiro v. Republic of Boliva*, 930 F.2d 1013, 1017-18 (2d Cir. 1991). Such a nexus exists here.

This action involves a set of rights and obligations that are defined by the limitations on execution in the FSIA and by D.C. law on the recognition of money judgments. Because the FSIA "was not intended to affect the substantive law determining the liability of a foreign state or instrumentality," "where state law provides a rule of liability governing private individuals, the FSIA requires the application of that rule to foreign states in like circumstances." *Aquamar, S.A. v. Del Monte Fresh Produce, N.A., Inc.*, 179 F.3d 1279, 1293 (11th Cir. 1999) (quoting *First National City Bank v. Banco Para El Comercio Exterior*, 462 U.S. 611, 620 n. 11 (1983)). The cause of action here is to recognize a money judgment from a foreign court pursuant to D.C. law for the purpose of executing on that judgment. D.C. Code Section 15-381, et. seq. (Uniform Foreign Money Judgments Recognition Act of 1995). Under the Uniform Foreign Money Judgments Recognition Act of 1995, a judgment may be recognized for purposes of execution on property here where – as is alleged here – the country in which the judgment was entered, Singapore, has a court system that provides for a chance to assert defenses, and where the subject judgment was entered and is final and enforceable against the defendants, as is alleged to be the case here with the Judgment against the

ROC. Thus, D.C. law providing for the recognition of foreign money judgments provides the requisite substantive legal basis for the link between Taiwan's commercial activities here and the cause of action – recognition of a money judgment to allow execution, in this case, on property exempt from coverage under the FSIA.

Either the implicit waiver of sovereign immunity represented by the Arbitration provisions of the Contract or the exception for commercial activities provides this Court a basis for exercising subject matter jurisdiction over the action. In addition, because the FSIA also provides for personal jurisdiction over foreign sovereigns where the Court has subject matter jurisdiction, the Court also has personal jurisdiction over the ROC – as the Defendants implicitly acknowledge by basing their argument for lack of personal jurisdiction solely on the alleged lack of subject matter jurisdiction.

## II.   SERVICE HERE WAS PROPER OR, IN THE ALTERNATIVE, PLAINTIFF SHOULD BE GIVEN LEAVE TO RE-SERVE THE COMPLAINT TO CURE ANY TECHNICAL DEFICIENCIES IN SERVICE

In this case, the Complaint, a Notice of Suit and translations of both were sent to the "director-general" of the ministry of foreign affairs of the ROC pursuant to 28 U.S.C. § 1603(a)(3), from the Clerk of this Court. The ROC claims that because the Complaint and Notice of Suit were not perfectly addressed to the actual head of the ministry of foreign affairs, the service of the Complaint and Notice was inadequate – even though it obviously received actual notice of the suit. The ROC is incorrect.

FSIA Section 1608 sets out the methods by which foreign sovereigns may be served. In this case, the ROC was served pursuant to Section 1608 (b)(3), which allows service by certified mail, dispatched from the clerk of the Court to the head of the foreign

ministry of the defendant, although, according to the Defendant, the wrong person was identified by a technically incorrect title. See 28 U.S.C. §1608(b)(3).

The provisions of Section 1608 exist to assure that actual notice be received. *Harris Corp. v. National Iranian Radio & Television*, 691 F.2d 1344, 1352 (11th Cir. 1982). Where actual notice has been received and the plaintiff has reasonably complied with the requirements of Section 1608 by sending a complaint and notice, correctly translated to the proper entity a "[t]he failure to follow precisely those steps in § 1608 designed to insure that actual service be made should not override and invalidate the fact that in this case notice was actually received." *Id.*; *Marlowe v. Argentine Naval Commission*, 604 F. Supp. 703, 708 (D.D.C. 1985). Simply because a notice names a person who is not the head of the ministry – when it is obviously directed to the head of the ministry – does not obviate the effectiveness of service. *Phoenix Consulting, Inc. v. Republic of Angola*, 35 F. Supp.2d 14, 18 (D.D.C. 1999).[4] Even when the courts have dismissed cases for insufficient service, requiring "strict" compliance with the provisions of Section 1608, they address cases where the papers were sent to an ambassador, consul or did not include correct translations – not where the correctly translated papers were delivered to the ministry of foreign affairs with an address that was designed to get the papers to the head of the foreign ministry. *See, e.g., Transero, Inc. v. La Fuerza Aearea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1995) (plaintiff served the "Bolivian Ambassador and Consul General in Washington, the Bolivian First Minister and the Bolivian Air

---

[4] *But see O'Brien v. Holy See*, 2005 U.S. Dist. Lexis 23072 (D. Ky. 2005) (finding that an improper addressee within Secretariat did not provide strict compliance with 1608(a), but allowed plaintiffs 60 days to re-serve). The court's position in *O'Brien* makes little sense. When a package is addressed to the "head" of a ministry or its "director-general", the current occupant of the office is the addressee no matter who is named. Otherwise, service would not be sufficient if the government changed heads of ministries or gave the job to a minister without a specific portfolio.

Force in La Paz – but never the Ministry of Foreign Affairs");[5] *Gerritsen v. Consolad General De Mexico*, 989 F.2d 340 (9th Cir. 1993) (plaintiff delivered complaint to the president of Mexico without a translation).

Finally, even if the Court were to find that service was technically defective, dismissal of the Complaint is not required. The alleged defect in service here is readily curable – plaintiff simply sends the Complaint to the person named as the current head of the ministry by his correct title – rather than the technically incorrect title used with the Complaint – and re-serves the Complaint and notice, either pursuant to Section 1608(a)(3) or some other method ordered by the Court. *Brown v. Austrian Airlines*, 1997 U.S. Dist. Lexis 21313 at *10 (E.D.N.Y. 1997) ("In the present case, defendant's actual notice is clear, given its prompt filing of motions to dismiss. Any deficiency in service, if there was one, can be easily cured by serving the proper person. Accordingly, plaintiffs are given thirty days from the date of this decision to effect service under the FSIA.") *Finamar Investors Inc. v. The Republic Of Tadjikistan*, 889 F. Supp. 114, 118 (S.D.N.Y. 1995).

### III.  IN THE ALTERNATIVE, PLAINTIFF SHOULD BE GIVEN LEAVE TO AMEND HIS COMPLAINT TO CURE ANY PLEADING DEFICIENCIES

This action arises from a judgment of a court in which the Defendant had an opportunity to defend itself. The transaction underlying the Judgment involved a commercial transaction founded on a contract – a contract in which the ROC waived its immunity by agreeing to arbitrate disputes under the terms of the Contract. Further, the Complaint here seeks recognition of that Judgment under D.C. law so as to allow

---

[5] In *Transaero*, plaintiff had made no attempt to serve under § 1608(a), instead serving under the less stringent provisions of § 1608(b), which were not applicable to defendant. 30 F.3d at 153.

execution of the Judgment against the ROC's non-exempt assets – the link required for a separate exemption under the FSIA.

As set forth above, all of those facts support the general allegations of the Complaint as to this Court's subject matter jurisdiction under the FSIA, allegations which on their fact sufficiently allege the required elements of lack of immunity and amenability to service of process. Accordingly, the motion may be denied.

Notwithstanding, Strategic Tech alternatively requests leave to amend the Complaint in order to set forth such matters with further particularity, should the Court take the view that the allegations as currently framed do not sufficiently delineate the waiver or other issues.

It is a given, of course, that a responsive pleading having been filed, a plaintiff may amend its complaint by leave of court or by written consent of any adverse parties. Fed. R. Civ. P. 15(a); *James Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 282-83 (D.C. Cir. 2000). While a district court has discretion regarding whether or not to grant such a request, the Court must heed Fed. R. Civ. P. 15's mandate that leave is to be "freely given when justice so requires." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Caribbean Broad. Sys. Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1083 (D.C. Cir. 1998). Indeed, "[d]enial of leave to amend constitutes an abuse of [that] discretion unless the court gives a sufficient reason for its denial, such as undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, futility of amendment or undue prejudice." *Boyd v. Grassmick*, 216 F.R.D. 166, 167 (D.D.C. 2003) (citations omitted).

In this instance, as the Contract itself demonstrates, facts supporting the allegations were already in the possession and knowledge of the ROC and under the liberal "notice" pleading standards of the federal rules of civil procedure nothing more should be required. But if more is called for, it is clear that justice requires that leave to amend be freely given here. Certainly none of the justifications for denying leave to amend set out in *Boyd* apply here. Moreover, Strategic Tech has already given the ROC substantial notice as to the underlying transaction – both here and in the Singapore courts, where the ROC appeared – and as to the nature of the relief sought from this Court. Given the allegations of the Complaint, the ROC's knowledge of its own dealings with Strategic Tech, its activities in the U.S. and the Judgment, Strategic Tech submits that should the Court determine that the Complaint is in some way deficient, the proper remedy would be to grant plaintiff leave to file an Amended Complaint. *See, e.g., Foman*, 371 U.S. at 182.

## CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests that the Defendant's motion to dismiss be denied and that it be given leave to re-serve the Complaint.

Dated: May 12, 2006

Respectfully submitted,

_____
Timothy Batten (DC Bar # 436303)
Straus & Boies, LLP
4041 University Dr.
Fifth Floor
Fairfax, VA 22030
(703) 764-8700 (Tel)
(703) 764-8704 (Fax)

Of Counsel:
Michael Straus (NY Bar #1721125)
Mark Schirmer (TN Bar #019717;
NY # 2258614)
1130 22nd Street South
Birmingham, AL 35205
(205) 324-3800 (Tel)
(205) 324-3996 (Fax)

Attorneys for Strategic
Technologies, Pte, Ltd., Plaintiff.