UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STRATEGIC TECHNOLOGIES, PTE, LTD., ) ) ) Plaintiff, ) ) v. ) ) REPUBLIC OF CHINA (TAIWAN) ) ) Defendant. ) | Civil Action No. 05-2311<br>Judge: Rosemary M. Collyer |

### MOTION TO DISMISS AMENDED COMPLAINT

The Republic of China (Taiwan) moves to dismiss the case for lack of subject matter jurisdiction.

Respectfully submitted,

/s/_____
Thomas G. Corcoran, Jr.
D.C. Bar No. 143693
Laina C. Wilk
D.C. Bar No. 477412
Berliner, Corcoran & Rowe, LLP
1101 17th Street, Northwest
Suite 1100
Washington, DC 20036
Telephone: (202) 293-5555
Fax: (202) 293-9035
E-mail: tgc@bcr-dc.com

November 14, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **STRATEGIC TECHNOLOGIES,** ) | |
| **PTE, LTD.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Civil Action No. 05-2311 |
| v. ) | Judge: Rosemary M. Collyer |
| ) | |
| **REPUBLIC OF CHINA (TAIWAN)** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS**

On November 30, 2005, Strategic Technologies, Pte, Ltd. ("Strategic Tech"), a Singapore corporation, filed suit against the Republic of China (Taiwan) ("ROC"), invoking the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§1602-11, as the basis for subject matter jurisdiction. The suit sought recognition of a final judgment ("Judgment") against the ROC in the High Court of the Republic of Singapore. The ROC moved to dismiss arguing that the Complaint did not allege facts showing subject matter jurisdiction and that Strategic Tech had not served the proper person, the ROC's Minister of Foreign Affairs.

On June 29, 2006, the Court granted the ROC's motion as follows:

The Complaint is dismissed without prejudice. Plaintiff may file, no later than July 28, 2006, an amended complaint <u>expressly alleging the factual basis for subject matter jurisdiction</u>. If Plaintiff files an amended complaint, Plaintiff shall serve it on the appropriate official. If Plaintiff fails to timely file an amended complaint, this case shall be dismissed. [Emphasis added.]

On July 28, 2006, Strategic Tech filed the Amended Complaint and, on October 31, served it on the "appropriate official," the ROC's Minister of Foreign Affairs. Only ¶¶7-15 of the Amended Complaint add allegations going to subject matter jurisdiction. ¶¶7-10 goes to the waiver

exception and ¶¶11-15 the commercial activity exception. As we show, these paragraphs do not "expressly alleg[e] the factual basis for subject matter jurisdiction" under either exception.

I. **The Amended Complaint does not "expressly allege the factual basis for subject matter jurisdiction" under the waiver exception, §1605(a)(1).**

Relevant to the waiver exception, the Amended Complaint alleges:

7. As noted above, this case arises out of a commercial transaction between Strategic Tech and an organ or agency of the ROC and the Judgment entered against the ROC after its breach of the parties agreement. The commercial transaction between the parties (the "Contract"),[1] contained provisions relating to both the commercial obligations of the parties and resolution of any disputes between the parties. The dispute resolution provisions of the Contract outlining the parties' agreement to normal commercial arbitration of their differences constitutes an implied waiver of any sovereign immunity the ROC might have under U.S. law.

8. Specifically, in Section 25.2 of the Contract, the ROC agrees that if an arbitration proceeding is initiated by Strategic Tech against the ROC, then Taiwan's Commercial Arbitration Act, setting forth the normal rules of commercial arbitration will apply to the arbitration of the dispute.

9. In addition, Section 25.2 of the Contract provides that should the ROC initiate arbitration proceedings under the Contract, such proceedings would occur outside the ROC, in the "Seller's" jurisdiction, and in accordance with the laws of the Seller's jurisdiction. The Contract also provides that, notwithstanding the location of where such arbitration proceedings are conducted, the ROC has agreed that results of any such proceeding would be final and binding as to both parties. These provisions have the effect of binding the ROC to the normal rules for enforcement of judgments and arbitration awards.

10. These provisions of the Contract constitute a waiver of the ROC' sovereign immunity.

As we understand Strategic Tech's position, it argues that the ROC has waived its immunity from the jurisdiction of U.S. courts just because it agreed, in circumstances not alleged to have

---

[1] We assume, for purposes of this motion that the "Contract" referred to is the contract attached to Strategic Tech's opposition to the ROC's first motion to dismiss, as a part of Exhibit 1 thereto. We also assume, but do not concede, that it is the relevant contract between the parties.

actually occurred,² to final and binding arbitration in a state other than the ROC. We disagree.

Section 1605(a)(1) states: "A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case ... in which the foreign state has waived its immunity . . . by implication." The D.C. Circuit, "follow[ing] the 'virtually unanimous' precedents," has "constru[ed] the implied waiver provision narrowly." *Creighton Ltd. v. Qatar,* 181 F.3d 118, 122 (D.C. Cir. 1999). "In particular," the court of appeals continued, "we have held that implicit in §1605(a)(1) is the requirement that the foreign state have intended to waive its sovereign immunity." *Id.*, citing *Princz v. Federal Republic of Germany*, 26 F.3d 1166, 1174 (1994) ( Nazi Germany's *jus cogens* violations did not waive immunity because the Federal Republic of Germany at no point "indicated its amenability to suit"), and *Foremost-McKesson*, *Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 444 (D.C.Cir. 1990) (filing of "Answer" that did not assert sovereign immunity did not waive immunity because, under applicable Executive Order, no responsive pleading was contemplated so Iran did not make a "conscious decision to take part in the litigation"). Courts find implicit waiver only where there is "strong evidence that this is what the foreign state intended." *Frolova v. U.S.S.R.,* 761 F.2d 370, 377 (7th Cir. 1985) ("refus[ing] to find an implicit waiver of immunity to suit in American courts from a contract clause providing for arbitration in a country other than the United States"), citing, among many cases, *Maritime Int'l Nominees Establishment v. Republic of Guinea*, 693 F.2d 1094, 1100 n. 10 (D.C.Cir. 1982) (alleged waiver insufficiently "specific" and "explicit")**.**

*Creighton, supra*, is controlling here. In that case, Creighton sought to enforce an arbitral

---

² According to the Amended Complaint, ¶18, Strategic Tech brought "suit" in the courts of Singapore. There is no allegation that the ROC initiated arbitration in Singapore.

award made in the Republic of France in a U.S. court. It was undisputed that, pursuant to the New York Convention, 21 U.S.T. 2517 (1958), signatory states agree to enforcement of an award in the courts of any signatory state if the arbitration takes place in any signatory state. Creighton argued, citing cases, that, because Qatar agreed to arbitrate in the territory of France, a state that had signed the New York Convention, waiver of sovereign immunity in the courts of the United States, also a state that had signed the convention, was implied. As the D.C. Circuit pointed out, however, "In each of those cases . . .the defendant sovereign was (unlike Qatar) a signatory of the Convention. . . . Qatar not having signed the Convention, we do not think that its agreement to arbitrate in a signatory country, without more, demonstrates the requisite intent to waive its sovereign immunity in the United States." *Id.* at 123.

So here. The Amended Complaint does not allege that the ROC is a signatory to the Convention, and concedes in its opposition to the first motion to dismiss, p. 5, n. 3, that it is not. The ROC here is thus in the same position as Qatar in *Creighton* (or the U.S.S.R. in *Frolova)*. In this Circuit (and, we suspect, all of the others), agreement to binding arbitration and enforcement in a country other than the United States – absent a further agreement, such as the New York Convention, to enforcement in the United States – is not sufficient to waive sovereign immunity in U.S. courts.

This outcome is clearly required by the general rule, announced in *Creighton*, that a foreign state must manifest "an intent to waive its sovereign immunity in the United States" before an implicit waiver will be found. *Id.* at 123. To the extent that a state's agreement to arbitration and enforcement in one state manifests any intention whatsoever with respect to enforcement in a second state, the intent manifested - absent an agreement, such as the New York Convention - is contrary

4

to enforcement in the second state.  *Expressio unius est exclusio alterius.*

Finally, in this case, there is no allegation that the ROC actually agreed to arbitration or enforcement in a foreign state.  According to the Amended Complaint, ¶9, the Contract provides that "<u>should</u> the ROC initiate arbitration ... such proceedings would occur outside the ROC, ... [and] results of such proceedings would be final and binding."  (Emphasis added.)  The Amended Complaint, however, does not allege that the ROC initiated arbitration thereby agreeing to enforcement in a foreign state.  Qatar in fact agreed to arbitrate in a foreign state and in fact did so.  Based on the Amended Complaint, the ROC did not.[3]

To summarize, Strategic Tech argues that, once a state agrees to arbitration and enforcement in the courts of any foreign state, it agrees by implication to enforcement in the courts of the United States.  *Creighton*, *supra*, shows that the conclusion is false.  In this case, furthermore, the premise is false.  Under the circumstances of this case, the ROC did not agree to arbitration and enforcement in the courts of any foreign state.  It never initiated arbitration in a foreign state.

II.     **The Amended Complaint does not "expressly allege the factual basis for subject matter jurisdiction" under the commercial activity exception, §1605(a)(2).**

Because ¶¶11-15 summarize Strategic Tech's argument in its opposition to the ROC's first motion to dismiss, at 6-7, that the commercial activity exception applies in this case, we assume

---

[3] We note here that "suit" in Singapore appears to be contrary to the Contract, see Exhibit 1 to Strategic Tech's opposition to first motion to dismiss, in two ways.  First, disputes between the parties were to be decided by arbitration not by a lawsuit.  *See* Article 25.1.  Second, the arbitration was to take place in the ROC if the dispute was initiated, as was apparently the case, by Strategic Tech.  *See* Article 25.2.  However, according to the Amended Complaint, the "suit" referred to went forward in Singapore, and the Judgment in the case is the result of that proceeding.  If a judgment is rendered "contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court," the Court "need not" recognize it.  *See* D.C. Code §15-383(b)(5).  This, however, is a merits issue.

these paragraphs are an attempt to invoke that exception.[4]  ¶¶11 and 12 read:

> 11. Similarly, the Judgment entered by a Singapore court and the availability of a right to enforce judgments under D.C. law provide an additional basis for jurisdiction over the ROC in this Court.
>
> 12. This action involves a set of rights and obligations that are defined by the limitations on execution in the FSIA and by D.C. law on the recognition of money judgments.  <u>Because the FSIA was not intended to affect the substantive law determining the liability of a foreign state or instrumentality and D.C. law provides a rule of liability governing private individuals, the FSIA requires the application of that rule to foreign states in like circumstances</u>.  (Emphasis added.)

¶¶13 and 14 describe the cause of action under "D.C. law," that is the District of Columbia's Uniform Foreign Money Judgments Recognition Act, D.C. Code §§15-381 *et seq*.  ¶15 concludes:

> <u>Therefore, D.C. law provides for the recognition of foreign money judgments and supplies the requisite substantive legal basis for the link between the ROC's commercial activities in the U.S. and the cause of action.</u>  The Court may therefore recognize and allow execution of a money judgment on property in this jurisdiction not withstanding any limitations imposed upon such execution provided for under the FSIA.  (Emphasis added.)

These paragraphs do not "expressly allege the factual basis for subject matter jurisdiction" as required by the Court's June 29 Order.  Preliminarily, although ¶15 refers to the "ROC's commercial activities in the U.S.," no "factual basis" for this allegation is provided.  The Amended Complaint nowhere states what the commercial activities in the United States are.

More fundamentally, Strategic Tech's position appears to be, see underlined passages in ¶¶12 and 15,  that because the FSIA makes foreign states liable to the same extent as private individuals under local law and because D.C. law provides a cause of action based on the Judgment, the Court therefore has subject matter jurisdiction over the case.  Not so.  "There is a clearly settled distinction in federal law between statutory provisions that waive sovereign immunity and those that create a

---

[4] The subsection setting out the commercial activity exception, §1605(a)(2), is cited only in ¶ 6 of the Amended Complaint.  Section 1605(a)(1), the waiver exception, is not cited at all.

cause of action." *Cicippio-Puleo v. Islamic Republic of Iran,* 353 F.3d 1024, 1033 (D.C. Cir. 2004) (holding that the terrorist exception to sovereign immunity, §1605(a)(7), does not create a private cause of action but only a waiver of sovereign immunity for jurisdictional purposes). As this District Court has written:

> Every case brought against a foreign state raises two distinct and crucial legal questions... First, the Court must look to whether it has jurisdiction to hear the claim. In the context of claims implicating the parameters of the FSIA, this jurisdictional determination is guided by an inquiry into whether the case falls within one of the statutory exceptions to the sovereign immunity of a foreign state. ... Second, the Court must consider the actual liability of the defendant foreign sovereign. In the context of the FSIA, this inquiry requires that the Court assess what -- if any -- causes of action the plaintiffs may bring against the defendants, and whether the foreign state is liable on any of those claims.

*Holland v. Iran*, 2005 U.S.Dist.LEXIS 40254 at *26(D.D.C. 2005) (Kollar-Kotelly, J.) (citations omitted).

The commercial activity exception to foreign sovereign immunity, 28 U.S.C. §1605(a)(2), provides that a foreign state "shall not" be immune from jurisdiction in U.S. courts in three situations, where "the action is based upon a commercial activity carried on in the United States by the foreign state" (clause 1); "upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere"(clause 2); or "upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States"(clause 3) .

Nowhere in ¶¶11-15 is any one of the three clauses of §1605(a)(2) quoted or otherwise referred to. As was the case with the first complaint, see memorandum in support of first motion to dismiss, p. 3, there is no "factual basis" for the conclusion that the commercial activity in question, the Contract between the ROC and Strategic Tech, is connected to the United States in any

7

of the ways set forth in §1605(a)(2). The facts alleged, even "generously construed in plaintiff's favor," *Foremost-McKesson v. Iran*, 905 F.2d at 440 n. 3 (D.C.Cir. 1990), do not provide a basis for commercial activity subject matter jurisdiction. Much less do these paragraphs of the Amended Complaint "expressly" allege the "factual basis" for subject matter jurisdiction.

## CONCLUSION

As this Court is aware, the FSIA is the "sole basis for obtaining jurisdiction over a foreign state in our courts." *Malewicz v. Amsterdam*, 362 F. Supp. 2d 298, 306 (D.D.C. 2005) (citing *Republic of Austria v. Altmann*, 541 U.S. 677, 699 (2005)); *BPA Int'l, Inc. v. Sweden,* 281 F. Supp. 2d 73, 80 (D.D.C. 2003). Because Strategic Tech has not alleged sufficient facts to show subject matter jurisdiction under the FSIA, this case should be dismissed.

Respectfully submitted,

/s/_____
Thomas G. Corcoran, Jr.
D.C. Bar No. 143693
Laina C. Wilk
D.C. Bar No. 477412
Berliner, Corcoran & Rowe, LLP
1101 17th Street, Northwest
Suite 1100
Washington, DC 20036
Telephone: (202) 293-5555
Fax: (202) 293-9035
E-mail: tgc@bcr-dc.com

November 14, 2006