UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

-----------------------------------------------------X
STRATEGIC TECHNOLOGIES,           )
      PTE, LTD.,                              )
                             )
          Plaintiff,                            )
                             )    Civil Action No. 05-2311
         v.                                     )    Judge: Rosemary M. Collyer
                             )
REPUBLIC OF CHINA (TAIWAN),     )
                             )
         Defendant.                          )
-----------------------------------------------------X

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT

**STRAUS & BOIES, LLP**
**4041 University Drive**
**Fifth Floor**
**Fairfax, VA 22030**
**Telephone: (703) 764-8700**
**Facsimile: (703) 764-8704**

*Counsel for Plaintiffs*

Dated:  December 22, 2006

## TABLE OF AUTHORITIES

**CASES**

*Agudas Chasidei Chabad v. Russian Fed'n*, 2006 U.S. Dist. LEXIS 87148 at *15 (D.D.C. Dec. 4, 2006)................................................................................................................. 8

*America West Airlines, Inc. v. GPA Group, Ltd*, 877 F.2d 793, 796 (9th Cir. 1989)........ 18

*Aquamar, S.A. v. Del Monte Fresh Produce, N.A., Inc.*, 179 F.3d 1279, 1293 (11th Cir. 1999) ...................................................................................................................... 19

*Birch Shipping Corporation v. Embassy of the United Republic of Tanzania*, 507 F. Supp. 311, 312 (D.D.C. 1980). ............................................................................................ 17

*BP Chemicals, Ltd v. Jiangsu Sopo Corporation (Group) Ltd.*, 285 F.3d 677, 682 (8th Cir. 2002) ...................................................................................................................... 18

*Bruce v. Consulate of Venezuela*, 2005 U.S. Dist. LEXIS 18898 at *5 (D.D.C. 2005) ... 10

*Chambers v. TimeWarner, Inc.*, 282 F.3d 147, 152-54 (2d Cir. 2002)............................ 10

*Creighton v. Qatar*, 181 F.3d 118 (D. C. Cir. 1999) ....................................................... 15

*Energoinvest DD v. Democratic Republic of Congo*, 355 F. Supp. 2d 9, 11 (D.D.C. 2004) ................................................................................................................................ 16

*Garden v. EPA*, 157 F. Supp.2d 1329, 1336 (S.D. Fla. 2001)........................................... 8

*Gulf Resources of America, Inc. v. Republic of the Congo*, 370 F.3d 65, 70-71 (D.C. Cir. 2004) .................................................................................................................. 7, 12

*Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) ..................................................... 9

*Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1131-32 (D.C. Cir. 2004) .................................................................................................................. 7, 8

*L'Europeene de Banque v. La Republic de Venezuela*, 700 F. Supp. 114, 119 (S.D.N.Y. 1988) ......................................................................................................................... 7

*Lafarge Canada, Inc. v. Bank of China*, 2000 U.S. Dist. Lexis 14253 (S.D.N.Y. 2000) . 13

*Malewicz v. City of Amsterdam*, 362 F. Supp.2d 298 (D.D.C. 2005)............................... 10

*Millen Industries, Inc. v. Coordination Council for North American Affairs*, 855 F.2d 879, 883-4 (D.C. Cir 1988) ......................................................................... 12

*Owens v. Republic of Sudan*, 374 F. Supp.2d 1, 10 (D.D.C. 2005) .................................. 17

*Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000)..... 8, 10

*Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 94 (D.C. Cir. 2002) ... 9

*Shapiro v. The Republic of Bolivia*, 930 F.3d 1013, 1017 (2d Cir. 1991) ................. 14, 18

*Sparrow v. Interbay Funding, L.L.C.*, 2006 U.S. Dist. LEXIS 71824 n.2 at *3 (D.D.C. Sept. 29, 2006) ............................................................................................................. 9

*Sugimoto v. Exportadora De Sal, S.A. de C.V.*, 19 F.3d 1309, 1311 (9th Cir. 1994) ....... 18

*Sun v. Taiwan*, 201 F.3d 1105, 1109 (9th Cir. 2000)......................................................... 18

## STATUTES

28 U.S.C. § 1602.................................................................................................................. 4, 5

28 U.S.C. §§ 1602-1611 .................................................................................................. 10, 11

28 U.S.C. § 1605 (a)(1)......................................................................................................... 10

28 U.S.C. § 1605(a) .............................................................................................................. 11

28 U.S.C. § 1605(a)(2)............................................................................................... 15, 16, 17

28 U.S.C. §§ 1605-1607 ........................................................................................................ 10

H.R. Rep. No. 1487, 94th Cong., 2d Sess. 18, reprinted in 1976 U.S. Code Cong. & Admin. News 6604, 6617 ............................................................................................... 11

## OTHER AUTHORITIES

Taiwanese Arbitration Law, Articles 48-50.......................................................................... 13

## RULES

Fed. R. Civ. P. 12(b)(6).......................................................................................................... 7

Fed. R. Civ. P. 8 ...................................................................................................................... 9

**TREATISES**

Treaty of Friendship and Commerce Between the United States and the Republic of
China, Article 6, Section 4 ........................................................................... 13

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
----------------------------------------------------X
STRATEGIC TECHNOLOGIES,           )
       PTE, LTD.,                 )
                                  )
              Plaintiff,          )
                                  )        Civil Action No. 05-2311
              v.                  )        Judge: Rosemary M. Collyer
                                  )
REPUBLIC OF CHINA (TAIWAN),       )
                                  )
              Defendant.          )
----------------------------------------------------X
```

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT**

Plaintiff Strategic Technologies, PTE, Ltd. ("Strategic Tech") respectfully

submits this memorandum of law in opposition to the Republic of China's Motion to

Dismiss (the "Motion").

**OVERVIEW**

Strategic Tech has come before this Court seeking to domesticate a judgment that

is final and enforceable under the laws of the country – Singapore – from which it

emanates.  The Defendant, the Republic of China on Taiwan (the "ROC"), challenges the

subject matter jurisdiction of this Court to even entertain a case seeking to validate a

foreign judgment – that it should be immune to having a judgment already entered

against it enforced.  The essence of the first of the ROC's arguments against enforcement

of a judgment against it is that in agreeing to allow the underlying contract to be enforced

against it and a binding judgment entered on the basis of the dispute resolution

mechanism in the ROC's contract with Strategic Tech (the "Contract"), it did not really

waive its immunity from such enforcement.   The ROC also argues that the amended

4

complaint in this action (the "Amended Complaint") does not sufficiently specify the basis for applying an exemption from sovereign immunity based on a cause of action related to a defendant's commercial activities in the U.S.  The ROC is wrong.

First, as required by law, the evidence of the ROC's intention to submit itself to enforcement of the Contract's provisions, and thus implicitly waive its sovereign immunity, is clear.  As alleged in the Amended Complaint and demonstrated by the Contract itself, the ROC agreed to resolve any issues it might have over the rights and obligations of the parties through arbitration in Singapore, that such arbitral proceedings would be governed by Singapore law, and any arbitral decisions would be binding upon the parties.  The ROC also agreed to resolve any issues Strategic Tech might have as to the rights and obligations of the parties through arbitration in the ROC, that such proceedings would governed by the ROC's normal commercial laws, and that the result of such an arbitration would bind it.  Taken together, the multiple provisions of the Contract by which the ROC agrees to be bound as a normal commercial party and allow the Contract to be enforced against it provide clear evidence of the ROC's intent to allow itself to be bound by a private dispute mechanism, like any other party, thus constituting a waiver of its immunity pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602, et seq. (the "FSIA").

Second, the Amended Complaint identifies facts establishing that its causes of action are related in a meaningful way to the ROC's commercial activities in the U.S.  – thus justifying an exemption from the ROC's sovereign immunity.  The Amended Complaint identifies the relevant causes of action that provide the jurisdictional link – the causes of action for domestication of foreign judgments.  It alleges facts that provide a

5

basis for each of the causes of action for judgment recognition.  Finally, it identifies the

purpose of the causes of action and this suit – to allow execution against ROC

commercial assets in the U.S.  These facts, in the context of the causes of action in the

Amended Complaint, fit within the exemption from immunity for causes of action related

to commercial activity provided for under the FSIA.

## FACTS

The Amended Complaint, like the original complaint, seeks recognition of a

foreign judgment under D.C. statutory and common law.  (See Amended Complaint, ¶¶

1, 13-16, 18, 23-24, 29-30.)  The judgment at issue, entered in the courts of Singapore

(the Judgment),[1] arose out of a commercial transaction between an organ or agency of the

ROC and Strategic Tech.  (Amended Complaint, ¶¶ 1, 3, 7, 18.)

The Contract[2] contains an Article,  composed of a number of separate provisions,

pursuant to which the ROC agreed to arbitrate all disputes under the Contract and that the

results of any such arbitration would bind the ROC.  (*See* Contract, Raynes Decl., Exh.

A., Article 25.)  More specifically, Section 25.1 of the Contract requires the parties to

notify each other of any dispute as to the performance of the contract and to submit their

disputes to arbitration if they cannot agree on an amicable resolution.  (*See*

Raynes Decl. Exh. A, Article 25, Section 25.1; Amended Complaint, ¶ 7.)  Section 25.2

of the Contract contains two separate mandates for arbitration.  First, if Strategic Tech

initiated arbitration (without regard to whether the dispute involved Strategic Tech's

obligations or the ROC's), arbitration proceedings would occur in the ROC under normal

---

[1] A copy of the Judgment was submitted to the Court as an Exhibit to the Amended Complaint.

[2] The Contract is part of Exhibit A to the Declaration of Joshua Raynes, executed on December 22, 2006 ("Raynes Decl.").  In the Exhibit, it follows authenticating affidavits filed in the Singapore courts.

ROC commercial arbitration law.  (Raynes Decl. Exh. A, Article 25, Section 25.2; Amended Complaint, ¶¶ 8.)  Second, under Section 25.2, if the ROC initiated an arbitration proceeding (once again, without regard to whether the dispute involved Strategic Tech's obligations or the ROC's), the ROC agreed that the arbitration would take place in Strategic Tech's home – Singapore – in accordance with Singapore law. (Raynes Decl. Exh. A, Article 25, Section 25.2; Amended Complaint, ¶ 9.)   Finally, Article 25, Section 25.4 of the Contract provided that any arbitration award entered would be "final and binding" on the ROC.  (Raynes Decl. Exh. A, Article 25, Section 25.4; *see* Amended Complaint, ¶ 9.)  Taken together, these provisions and their effect constitute an implied waiver of the ROC's sovereign immunity.  (Amended Complaint, ¶¶ 7, 10.)

The Contract was submitted to the Singapore courts during the course of proceedings there.  (*See* Raynes Decl. Exh. A.)  The Singapore courts, in which the Judgment was eventually entered, had personal jurisdiction over the ROC.  (Amended Complaint, ¶¶ 21, 27.)  In hearing the case leading to the Judgment, the Singapore courts provided for notice, right to counsel, an opportunity to present and dispute evidence and a right to appeal adverse decisions.  (Amended Complaint, ¶¶ 13-14, 22, 28.)  The Judgment, entered by the Singapore courts, is a final and fully enforceable judgment under Singapore law.  (Amended Complaint, ¶¶ 1, 14, 23, 29.)  As such, it is a final and enforceable judgment under D.C. law and is entitled to recognition.  Finally, the reason for seeking recognition of the judgment is to allow execution on the ROC's commercial assets in the United States, (Amended Complaint, ¶ 19), linking the cause of action to the ROC's U.S. commercial activities.

## **LEGAL ARGUMENT**

**I.    THE ALLEGATIONS OF THE AMENDED COMPLAINT ARE SUFFICIENT UNDER THE RULES FOR PLEADING SUBJECT MATTER JURISDICTION AND THE ORDER OF THIS COURT.**

In order to prevail on its claim of sovereign immunity, the ROC will bear the burden of proving that the exceptions to immunity Strategic Tech identifies do not apply in this case. *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1131-32 (D.C. Cir. 2004); *Gulf Resources of America, Inc. v. Republic of the Congo*, 370 F.3d 65, 70-71 (D.C. Cir. 2004) ("the defendant bears the burden of proving that the plaintiff's allegations do not bring its case within a statutory exception to immunity"); *see*, *e.g.*, *L'Europeene de Banque v. La Republic de Venezuela*, 700 F. Supp. 114, 119 (S.D.N.Y. 1988) ("Under the FSIA, defendants bear the evidentiary burden of demonstrating that the exceptions are not applicable" once those exceptions have been identified and a prima facie support for their applicability has been made).  The ROC cannot enhance Strategic Tech's pleading burdens by merely questioning the truth of some of the allegations in the Amended Complaint or asking for more specificity.  Because the ROC has presented no evidence or affidavits in connection with the Motion,  it has failed to satisfy its burden of production and the allegations of the Amended Complaint must be addressed under the standards applicable to a normal motion to dismiss made pursuant to Fed. R. Civ. P. 12(b)(6).  *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1133 (D.C. Cir. 2004); *see Garden v. EPA*, 157 F. Supp.2d 1329, 1336 (S.D. Fla. 2001) ("In this case, the defendants have made a facial attack upon the complaint and have not attempt to present any factual evidence from outside the complaint to the court.  Therefore, the

motion to dismiss [pursuant to 12(b)(1)] will be reviewed under the same standards as a

12(b)(6) motion….").

Thus, in reviewing the ROC's 12(b)(1) motion to dismiss  the Court must assume

the truth of all factual allegations in the Amended Complaint, and construe those

allegations in Strategic Tech's favor, even if some of the allegations may be subject to

dispute by the ROC.  *Agudas Chasidei Chabad v. Russian Fed'n*, 2006 U.S. Dist. LEXIS

87148 at *15 (D.D.C. Dec. 4, 2006); *see Phoenix Consulting, Inc. v. Republic of Angola*,

216 F.3d 36, 40 (D.C. Cir. 2000).  As with a motion to dismiss under Rule 12(b)(6), this

Court should not dismiss unless "no plausible inferences can be drawn from the facts

alleged that, if proven, would provide grounds for relief."  *Price v. Socialist People's

Libyan Arab Jamahiriya*, 294 F.3d 82, 94 (D.C. Cir. 2002).  In general, plaintiffs need

not set forth all the facts needed to support the claim of sovereign immunity, but rather,

need only set before a court those facts that provide a  court with a reasonable basis for a

preliminary determination that subject matter jurisdiction is appropriate.  *Id*.   Further, in

reviewing the sufficiency of the Amended Complaint under the standards for a motion to

dismiss, the Court can take into account the actual terms of the Contract (not just the

summary in the Amended Complaint) and treat those provisions as effectively a part of

the Amended Complaint without converting the motion into an evidentiary motion.

*Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) (on a motion to dismiss a court can

take into account the full text of documents referenced and relied upon in the complaint);

*Sparrow v. Interbay Funding, L.L.C.*, 2006 U.S. Dist. LEXIS 71824 n.2 at *3 (D.D.C.

Sept. 29, 2006); *see Chambers v. TimeWarner, Inc.*, 282 F.3d 147, 152-54 (2d Cir. 2002)

(explaining what documents can be taken into account on a motion to dismiss without

converting the motion into summary judgment). In "determining the existence of subject matter jurisdiction, the court is not limited to the jurisdictional statutes identified in the complaint.   Rather, the Court may find that it has subject matter jurisdiction where "an examination of the entire complaint reveals a proper basis for assuming jurisdiction," even one other than that asserted in a complaint.  *Bruce v. Consulate of Venezuela*, 2005 U.S. Dist. LEXIS 18898 at *5 (D.D.C. 2005).   The allegations of the Amended Complaint go well beyond providing the required notice of the basis for subject matter jurisdiction by identifying the facts forming the basis for subject matter jurisdiction and the exemptions to the ROC's claimed sovereign immunity on which Strategic Tech relies.

The Court may, of course, go beyond the pleadings if it believes that additional materials are necessary to effectively rule on the motion to dismiss on subject matter jurisdiction.  To the extent that the ROC raises issues of fact in its response, Strategic Tech is entitled to discovery and to present evidence regarding any disputed factual issues prior to the Court ruling on those disputes and dismissing this action for lack of subject matter jurisdiction.  *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d at 40; *see Malewicz v. City of Amsterdam*, 362 F. Supp.2d 298 (D.D.C. 2005).

The allegations of the Amended Complaint fulfill the notice requirements of Fed. R. Civ. P. 8 and this Court's minute order dated June 29, 2006, which provided that Strategic Tech should file and serve an Amended Complaint that explicitly identifies the bases for subject matter jurisdiction.  The Amended Complaint explicitly provides the basis for subject matter jurisdiction – the implied waiver created by the arbitration provisions in the parties' contract – and the factual basis for applying the "commercial activity" exception to sovereign immunity by identifying the relevant judgment, the facts

underlying the judgment, and that the purpose of domesticating the judgment is to allow execution on the ROC's commercial assets.[3]  The Amended Complaint is more than sufficiently specific.

## II.    THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THIS ACTION

The ROC claims that this Court lacks subject matter jurisdiction over this case because the ROC's actions in entering into the Contract did not waive its sovereign immunity and because the "commercial activity" exception to sovereign immunity does not apply here.  The ROC is wrong.

### A.    The Application of the FSIA to the ROC.

Because the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611 (the "FSIA"), applies to the ROC, *see Millen Industries, Inc. v. Coordination Council for North American Affairs*, 855 F.2d 879, 883-4 (D.C. Cir 1988), the FSIA establishes the framework for determining whether this Court has subject matter jurisdiction over this action.  The FSIA authorizes a foreign plaintiff, like Strategic Tech, to sue a foreign sovereign in federal court in the U.S. "provided the substantive requirements of the Act are satisfied … and grants federal district courts subject matter jurisdiction over *in personam* civil claims with respect to which the defendant foreign state is not entitled to immunity under 28 U.S.C. §§ 1605-1607." *Gulf Resources America, Inc. v. Republic of the Congo*, 370 F.3d 65, 70 (D.C. Cir. 2004).  As it relates to this case – and as pointed

---

[3] The ROC notes that the legal conclusion paragraph of the jurisdictional allegations does not refer to 28 U.S.C. § 1605 (a)(1).  The Amended Complaint, however, asserts explicitly that the Contract's provisions constitute an "implied waiver" and a "waiver" of the ROC's sovereign immunity" under U.S. law (which is defined by the FSIA) in paragraphs 7 and 10   If the Court determines that adding "1605(a)(1)" to the allegations of the Amended Complaint set forth in paragraphs 6, 7, or 10, would serve any purpose in aiding the Court in determining whether subject matter jurisdiction exists, Strategic Tech requests that it be permitted to amend the Amended Complaint to add such reference(s).

out in the Amended Complaint – a party cannot claim sovereign immunity when it has explicitly or implicitly waived its immunity and a party has no immunity if the cause of action relates to commercial activity in the U.S.[4]   Both of these exceptions apply here.

   B.    The Provisions of Article 25 of the Contract, Taken Together, Waive the ROC's Sovereign Immunity.

   In general, courts have found that three situations justify a finding that a government has waived sovereign immunity with respect to the issues underlying the litigation.  Circumstances justifying a finding that a state has waived its sovereign immunity include situations where:  (a) a foreign state has agreed to arbitration in another country, (b) a foreign state has agreed that the law of a particular country should govern a contract, and (c) a foreign state has filed a responsive pleading in an action without raising the defense of sovereign immunity.  *See Lafarge Canada, Inc. v. Bank of China*, 2000 U.S. Dist. Lexis 14253 (S.D.N.Y. 2000); H.R. Rep. No. 1487, 94th Cong., 2d Sess. 18, *reprinted in* 1976 U.S. Code Cong. & Admin. News 6604, 6617.  While the provision of the FSIA allowing courts to find implied waivers of sovereign immunity is construed narrowly, normally when a foreign state engages in these activities, its intent to waive sovereign immunity is "unmistakable."  *See Shapiro v. The Republic of Bolivia*, 930 F.3d 1013, 1017 (2d Cir. 1991).

---

[4] The FSIA provides, in relevant part, that:
(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case —
(1) in which the foreign state has waived its immunity either explicitly or *by implication*, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver;
(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;…

28 U.S.C. § 1605(a) (emphasis added).

12

The Contract between the ROC and Strategic Tech contains a number of provisions, including a choice of law clause, force majeure clauses and clauses outlining the obligations of the parties.  For purposes of addressing the issues raised by the Motion, the relevant contractual provisions are found in Article 25 of the Contract, entitled "Arbitration," which contains four sections.

Section 25.1 of the Contract requires the parties to attempt to negotiate any differences they might have and should such negotiations fail, to submit the dispute (without specification or regard for whose rights or obligations were at issue) to arbitration.  (See Raynes Decl. Exh. A, Article 25, Section 25.1; Amended Complaint, ¶ 7.)

Section 25.2 of the Contract contains two separate clauses concerning the location and governing law of any arbitration proceedings that either party might commence. First, if Strategic Tech initiated an arbitration proceeding (without regard to which party's rights or obligations are involved), the ROC and Strategic Tech have agreed that the arbitration would take place in the ROC under normal ROC Commercial Arbitration law.  Second, if the ROC initiated an arbitration proceeding (once again, without regard whose rights or obligations were at issue), the ROC and Strategic Tech have agreed that the arbitration would take place in Singapore in accordance with Singapore law.  (Raynes Decl. Exh. A, Article 25, Section 25.2; Amended Complaint, ¶¶ 8, 9.)

In Section 25.4 of the Contract, the ROC and Strategic Tech have agreed that no matter who initiated an arbitration proceeding, the results of the arbitration would be final and binding on the parties to the agreement:  the ROC and Strategic Tech.  (Raynes Decl. Exh. A, Article 25, Section 25.4; Amended Complaint, ¶ 9.)

13

The arbitration provisions in the Contract do not merely provide for arbitration of any disputes between the ROC and Strategic Tech. Nor does the Contract merely provide for a location for any arbitration proceeding. Rather, the Contract specifically states that normal "Commercial Arbitration Act" rules apply to any arbitrations brought in the ROC and that the laws of Singapore apply in any arbitration occurring there. Further, the ROC has agreed that the results of any such arbitration are "final and binding," unmistakably committing itself to be treated as a normal commercial party. This is not, as in *Creighton v. Qatar*, 181 F.3d 118 (D. C. Cir. 1999) (and the other cases cited by the ROC), merely an agreement to submit to arbitration in a forum outside a country's borders. Rather, the Contract here contains four separate provisions, clauses agreeing to binding arbitration of disputes *either* inside the ROC – the result of which could be enforced in U.S. courts pursuant to bilateral agreements between the U.S. and Taiwan[5] – or outside the ROC, which would be enforceable in the ROC itself pursuant to ROC law[6], and a clause agreeing in either case the results of the arbitration would be final and binding upon the ROC as one of the parties to the agreement.[7]

These clauses, taken together, show an unmistakable intent to allow the ROC to be treated like any other commercial party with respect to its rights and obligations under

---

[5] *See, e.g.*, Article 6, Section 4 of the Treaty of Friendship and Commerce Between the United States and the Republic of China (ROC entities get equal treatment to those of any country in the courts of the U.S. in the enforcement of their rights). (Copy attached to the Raynes Declaration as Exhibit B.)

[6] *See* Articles 48-50 of the Taiwanese Arbitration Law, available at http://www.arbitration.org.tw/english/index-8-2.html (foreign arbitral judgments enforceable in the ROC).

[7] In addition, because judgments and decrees issued in the ROC can be enforced in the U.S. – and because the U.S. (and specifically D.C.) provide for enforcement of foreign judgments, both those from the ROC and from Singapore, the ROC should be held to have understood that U.S. courts could be involved in enforcing any judgment or arbitral award that might be entered against it.

14

the Contract and thus waive immunity from enforcement of the Contract.  (Amended

Complaint, ¶¶ 7, 10.)  The ROC agreed to adhere to its own commercial arbitration code

and to accept as binding any arbitration award entered pursuant to that Code.  It agreed to

accept as binding any arbitral award entered in Singapore and enforced under the laws of

Singapore.  This combination of factors, agreeing to arbitration, agreeing to multiple fora,

agreeing to be governed by the law of multiple fora in the procedure for and enforcement

of arbitral awards – no matter whose rights were at issue – and agreeing to be bound by

the outcome, demonstrates an intent to allow enforcement of the contract against the

ROC as if it were not a sovereign and thus waives its sovereign immunity.  *See*

*Energoinvest DD v. Democratic Republic of Congo*, 355 F. Supp. 2d 9, 11 (D.D.C. 2004)

("The legislative history of this section [of the implied waiver section] expressly states

that an agreement to arbitrate or to submit to the laws of another country constitutes an

implicit waiver"); *Birch Shipping Corporation v. Embassy of the United Republic of*

*Tanzania*, 507 F. Supp. 311, 312 (D.D.C. 1980).[8]

Finally, the ROC makes a somewhat unique argument – that even though it has

agreed to arbitration of disputes, because it did not itself initiate an arbitration

proceeding, it did not *really* agree to the arbitration of any disputes.  (See Memorandum

in Support of the ROC's Motion, p. 5.)   The ROC makes this argument in spite of the

terms of the Contract, by which the ROC explicitly agrees to the arbitration of disputes

and that the outcome of any such arbitration proceeding – whether initiated by the ROC

---

[8] The ROC seems to argue that in order for an implied waiver to exist, parties must agree to
enforcement of their contracts in the United States.  But that is not the standard for determining
whether an implied waiver exists.  The standard is whether the terms of the agreement – the facts
at issue – show an intent to allow enforcement of the Contract against the ROC.  The provisions
of the Contract, taken together, show such an intent.

or Strategic Tech – will bind the ROC.  Thus, by its own agreement – the Contract, which it signed – the ROC has agreed to enforcement of the Contract against it and thus evinced the requisite intent to waive its sovereign immunity.

> C.    The Court has Subject Matter Jurisdiction Pursuant to 28 U.S.C. 1605(a)(2), the Commercial Activity Exception.

Under the FSIA, the ROC cannot claim sovereign immunity for causes of action "in which the action is based upon a commercial activity with a nexus to the United States."  *Owens v. Republic of Sudan*, 374 F. Supp.2d 1, 10 (D.D.C. 2005).  To determine whether commercial activity exception in the FSIA, 28 U.S.C. § 1605(a)(2), applies in this case, Strategic Tech's cause of action must have a reasonable nexus or relationship to the ROC's commercial activity in the United States.  *See America West Airlines, Inc. v. GPA Group, Ltd*, 877 F.2d 793, 796 (9th Cir. 1989); *Shapiro v. Republic of Boliva*, 930 F.2d 1013, 1017-18 (2d Cir. 1991).  This required relationship between Strategic Tech's claim and the ROC's commercial activity exists where one element of the relevant claim concerns the ROC's commercial activity in the United States.  *BP Chemicals, Ltd v. Jiangsu Sopo Corporation (Group) Ltd.*, 285 F.3d 677, 682 (8th Cir. 2002); *Sugimoto v. Exportadora De Sal, S.A. de C.V.*, 19 F.3d 1309, 1311 (9th Cir. 1994).[9]  The facts providing such a nexus exists here and are sufficiently pled in the Amended Complaint.

The Amended Complaint forwards causes of action based upon D.C. common and statutory law seeking recognition of a foreign judgment for the purposes of executing on that judgment.  Under D.C.'s codification of the Uniform Foreign Money Judgments Recognition Act of 1995, a judgment may be recognized for purposes of execution on property here where the country in which the judgment was entered has a court system

---

[9] Thus, entire case need not be based on the ROC's commercial activities.  *See Sun v. Taiwan*, 201 F.3d 1105, 1109 (9th Cir. 2000).

that provides for a full and fair opportunity to litigate (meaning a chance to assert defenses) and where the subject judgment was entered such a judgment is also final and enforceable against the defendants.  D.C. Code Section 15-381, et. seq. (the "Uniform Foreign Money Judgments Recognition Act of 1995").  The Amended Complaint contains allegations showing that each of these factual requisites for enforcement are met.

Specifically, the Amended Complaint alleges that the Singapore courts had personal jurisdiction over the ROC, that they provide for notice, a hearing, a right to counsel, a right to present evidence, confront witnesses, and a right to appeal adverse decisions.  (Amended Complaint, ¶¶ 13-14, 21-22, 27-28.)  The also alleges that the Judgment exists and that it is a final, fully enforceable judgment under the laws of Singapore.  (Amended Complaint, ¶¶ 1, 14, 23, 29.)

These allegations provide a basis for a cause of action under D.C. law for recognition of a foreign judgment.  If the cause of action for recognition of the Judgment concerns the ROC's commercial activities in some way, the law will apply to the ROC like any other judgment debtor.  *Aquamar, S.A. v. Del Monte Fresh Produce, N.A., Inc.*, 179 F.3d 1279, 1293 (11th Cir. 1999) ("where state law provides a rule of liability governing private individuals, the FSIA requires the application of that rule to foreign states in like circumstances").

The ROC claims, however, that the factual basis for application of the commercial activities exception is not pled with sufficient specificity.  The ROC is simply wrong.

The Amended Complaint alleges that Strategic Tech has obtained a judgment – arising out of the ROC's commercial activity – which it wishes to domesticate and enforce.  (Amended Complaint, ¶¶ 1, 7, 14, 19, 23, 29.)  It alleges the factual requisites

17

for enforcement of such judgments.  (Amended Complaint, ¶¶ 13-14, 21-22, 27-28.) I

alleges that D.C. law creates a right to recognize such judgments.  (Amended Complaint,

¶¶ 15,  24, 30.)  And finally it alleges that the purpose of the cause of action – its nexus to

U.S. commercial activity – is to allow execution on available U.S. assets (i.e., including

those arising from the ROC's commercial activities).  (Amended Complaint, ¶ 19.)

These allegations of fact (the intended purpose of the action, the facts allowing

domestication for that purpose and the fact the law allows such domestication and

execution), thus specifically allege the nexus to commercial activity required to fall under

the exception to sovereign immunity provided for in 28 U.S.C. § 1605(a)(2).

## **CONCLUSION**

Either the implicit waiver of sovereign immunity created by Article 25 of the

Contract or the FSIA's exception to sovereign immunity for causes of action connected to

commercial activities in the U.S. provides a basis for this Court to exercising subject

matter jurisdiction in this action.  For these reasons, Strategic Tech respectfully requests

that the ROC's Motion be denied.

Dated: December 22, 2006

Respectfully submitted,


_____/s/ Timothy Battin_____
Timothy Battin (DC Bar # 436303)
Straus & Boies, LLP
4041 University Dr.
Fifth Floor
Fairfax, VA  22030
(703) 764-8700 (Tel)
(703) 764-8704 (Fax)

Of Counsel:

Michael Straus (NY Bar #1721125)
Mark Schirmer (TN Bar #019717;
NY # 2258614)
1130 22nd Street South
Birmingham, AL  35205
(205) 324-3800 (Tel)
(205) 324-3996 (Fax)

Attorneys for Strategic
Technologies, Pte, Ltd., Plaintiff.