# EXHIBIT B

LEXSEE 6 BEVANS 761

U.S. Treaties on LEXIS

CHINA

FRIENDSHIP, COMMERCE, AND NAVIGATION

TIAS 1871

*1946 U.S.T. LEXIS 303; 6 Bevans 761*

November 4, 1946, Date-Signed

November 30, 1948, Date-In-Force

**STATUS:**
[*1] Treaty and protocol signed at Nanking November 4, 1946
Ratified by China November 11, 1946
Senate advice and consent to ratification, with a reservation and understandings, June 2, 1948 n1
Ratified by the President of the United States, with a reservation and understandings, November 8, 1948 n1
Supplemented by exchanges of notes at Nanking November 29, 1948 n2
Ratifications exchanged at Nanking November 30, 1948
Entered into force November 30, 1948
Proclaimed by the President of the United States January 12, 1949
Modified by understanding of June 20 and July 28, 1951 n3

> n1 The U.S. reservation and understandings read as follows:
> "The Government of the United States of America does not accept Section 5 (c) of the Protocol relating to protection against translations of literary and artistic works, and with the understanding that United States interests in this respect will be interpreted in accordance with the provisions of the Treaty as to Commercial Relations signed at Shanghai, October 8, 1903 [TS 430, ante, p. 695], until further negotiations and agreement concerning translations are forthcoming. The United States stands ready to enter into immediate negotiations with China for further improvement in copyright relationships wth particular emphasis upon the desire of the United States to afford protection of translations. The Senate is of the opinion that the protection of the author or literary and artistic property in the exclusive right to translate or authorize the translation of his works is of importance as a matter of justice to the author and is of equal importance as a means for assuring a true translation and faithful presentation for peoples who must receive it in a language other than the original. Under present day conditions, such protection is essential to promote effective diffusion of literary and artistic works and to encourage responsible industries engaged in the production of such works within a country.
> "The Senate further understands that the Treaty does not obligate either party to extend most-favored-nation treatment with respect to copyright."

[*2]

> n2 TIAS 1871, post, p. 846.

> n3 Not printed. The Chinese Ambassador in his note of July 28, 1951 to the Secretary of State acquiesced in the application of controls by the United States Government to areas of China under Communist control. The Acting Legal Adviser of the Department of State, in a letter of March 15, 1965 to the Assistant Attorney General, noted that certain provisions of the treaty of November 4, 1946 were considered suspended with respect to areas of China not under control of the National Government of the Republic of China.

## TREATY OF FRIENDSHIP, COMMERCE AND NAVIGATION BETWEEN THE UNITED STATES OF AMERICA AND THE REPUBLIC OF CHINA

**TEXT:**
The United States of America and the Republic of China, desirous of strengthening the bond of peace and the ties of friendship which have happily long prevailed between the two countries by arrangements designed to promote friendly intercourse between their respective territories through provisions responsive to the spiritual, cultural, economic and commercial aspirations of the peoples thereof, have resolved to conclude a Treaty of Friendship, Commerce and Navigation, and for that purpose have appointed as their Plenipotentiaries, [*3]

The President of the United States of America:

Dr. J. Leighton Stuart, Ambassador Extraordinary and Plenipotentiary of the United States of America to the Republic of China, and

Mr. Robert Lacy Smyth, Special Commissioner and Consul General of the United States of America at Tientsin; and,

The President of the National Government of the Republic of China:

Dr. Wang Shih-chieh, Minister for Foreign Affairs of the Republic of China, and

Dr. Wang Hua-cheng, Director of the Treaty Department of the Ministry of Foreign Affairs of the Republic of China;

Who, having communicated to each other their full powers found to be in due form, have agreed upon the following Articles:

ARTICLE I

1. There shall be constant peace and firm and lasting friendship between the United States of America and the Republic of China.

2. The Government of each High Contracting Party shall have the right to send to the Government of the other High Contracting Party duly accredited diplomatic representatives, who shall be received and, upon the basis of reciprocity, shall enjoy in the territories of such other High Contracting Party the rights, privileges, exemptions and immunities accorded under generally recognized [*4] principles of international law.

ARTICLE II n4

n4 See also protocol, p. 785.

1. The nationals of either High Contracting Party shall be permitted to enter the territories of the other High Contracting Party, and shall be permitted to reside, travel and carry on trade throughout the whole extent of such territories. In the enjoyment of the right to reside and travel, the nationals of either High Contracting Party shall be subject, within the territories of the other High Contracting Party, to the applicable laws and regulations, if any, which are or may hereafter be enforced by the duly constituted authorities, provided that they shall not be subject to unreasonable interference and that they shall not be required to apply for or carry any travel documents, other than (a) valid passports or (b) other documents of identification issued by the competent authorities of their respective countries.

2. The nationals of either High Contracting Party shall, throughout the whole extent of the territories of the other High Contracting [*5] Party, be permitted, without interference, to engage in and to carry on commercial, manufacturing, processing, scientific, educational, religious and philanthropic activities not forbidden by the laws and regulations enforced by the duly constituted authorities; to engage in every profession not reserved exclusively to nationals of the country; to acquire, hold, erect or lease, and occupy appropriate buildings, and to lease appropriate lands, for residential, commercial, manufacturing, processing, professional, scientific, educational, religious, philanthropic and mortuary purposes; to employ agents or employees of their choice regardless of nationality; to do anything incidental to or necessary for the enjoyment of any such rights and privileges; and to exercise all these rights and privileges upon the same terms

as nationals of such other High Contracting Party in conformity with the applicable laws and regulations, if any, which are or may hereafter be enforced by the duly constituted authorities.

3. The nationals of either High Contracting Party shall not in any case, in the enjoyment of the rights and privileges provided by paragraphs 1 and 2 of this Article, receive treatment [*6] with respect to such rights and privileges less favorable than the treatment which is or may hereafter be accorded to the nationals of any third country.

4. Nothing in this Treaty shall be construed to affect existing statutes of either High Contracting Party in relation to immigration or the right of either High Contracting Party to enact statutes relating to immigration; provided, however, that nothing in this paragraph shall prevent the nationals of either High Contracting Party from entering, traveling and residing in the territories of the other High Contracting Party in order to carry on trade between the United States of America and the Republic of China, or to engage in any commercial activity related thereto or connected therewith, upon terms as favorable as are or may hereafter be accorded to the nationals of any third country entering, traveling and residing in such territories in order to carry on trade between such other High Contracting Party and such third country or to engage in commercial activity related to or connected with such trade; and provided further that nothing in the provisions of Section 3 of the Immigration Act of the United States of America dated February [*7] 5, 1917, n5 which delimit certain geographical zones for the purpose of restricting immigration, shall be construed as preventing admission into the United States of Chinese persons and persons of Chinese descent.

n5 39 Stat. 874.

ARTICLE III

1. As used in this Treaty the term "corporations and associations" shall mean corporations, companies, partnerships and other associations, whether or not with limited liability and whether or not for pecuniary profit, which have been or may hereafter be created or organized under the applicable laws and regulations enforced by the duly constituted authorities.

2. Corporations and associations created or organized under the applicable laws and regulations enforced by the duly constituted authorities within the territories of either High Contracting Party shall be deemed to be corporations and associations of such High Contracting Party and shall have their juridical status recognized within the territories of the other High Contracting Party, whether or not they have a permanent [*8] establishment, branch or agency therein. Corporations and associations of either High Contracting Party shall have the right to establish their branch offices in the territories of the other High Contracting Party and to fulfill their functions therein after they have complied with requirements of admission not inconsistent with the provisions of the following paragraph, provided that the right to exercise such functions is accorded by this Treaty or the exercise of such functions is otherwise consistent with the laws and regulations of such other High Contracting Party.

3. The High Contracting Parties, adhering generally to the principle of national treatment with respect to the matters enumerated in this paragraph, agree that corporations and associations of either High Contracting Party shall be permitted, throughout the whole extent of the territories of the other High Contracting Party, in conformity with the applicable laws and regulations, if any, which are or may hereafter be enforced by the duly constituted authorities, to engage in and carry on commercial, manufacturing, processing, financial, scientific, educational, religious and philanthropic activities; to acquire, hold, [*9] erect or lease, and occupy appropriate buildings, and to lease appropriate lands, for commercial, manufacturing, processing, financial, scientific, educational, religious and philanthropic purposes; to employ agents or employees of their choice regardless of nationality; to do anything incidental to or necessary for the enjoyment of such rights and privileges; and to exercise all these rights and privileges, without interference, upon the same terms as corporations and associations of such other High Contracting Party unless otherwise provided by the laws of that High Contracting Party. The preceding sentence, and all other provisions of this Treaty according to corporations and associations of the Republic of China rights and privileges upon the same terms as corporations and associations of the United States of America, shall be construed as according such rights and privileges, in any state, territory or possession of the United States of America, upon the same terms as such rights and privileges are or may hereafter be accorded therein to corporations and associations created or organized in other states, territories or possessions of the United States of America.

4. Corporations [*10] and associations of either High Contracting Party shall not in any case, in the enjoyment of the rights and privileges provided by this Article, receive treatment with respect to such rights and privileges less favorable than the treatment which is or may hereafter be accorded to corporations and associations of any third country.

ARTICLE IV

1. The nationals, corporations and associations of either High Contracting Party shall enjoy, throughout the territories of the other High Contracting Party, rights and privileges with respect to organization of and participation in corporations and associations of such other High Contracting Party, including the enjoyment of rights with respect to promotion and incorporation, the purchase, ownership and sale of shares and, in the case of nationals, the holding of executive and official positions, in conformity with the applicable laws and regulations, if any, which are or may hereafter be enforced by the duly constituted authorities, upon the same terms as nationals, corporations and associations of any third country. Corporations and associations of either High Contracting Party, organized or participated in by nationals, corporations and associations [*11] of the other High Contracting Party pursuant to the rights and privileges enumerated in this paragraph shall be permitted to exercise the functions for which they are created or organized, in conformity with the applicable laws and regulations, if any, which are or may hereafter be enforced by the duly constituted authorities, upon the same terms as corporations and associations that are similarly organized or participated in by nationals, corporations and associations of any third country. With respect to the ownership of stock by nationals, corporations and associations of either High Contracting Party in corporations and associations of the other High Contracting Party engaged in mining on public lands of such other High Contracting Party, neither High Contracting Party shall be obligated by the provisions of this paragraph to accord rights and privileges greater than those which its nationals, corporations and associations receive from the other High Contracting Party.

2. The nationals, corporations and associations of either High Contracting Party shall enjoy, throughout the territories of the other High Contracting Party, and in conformity with the applicable laws and regulations, [*12] if any, which are or may hereafter be enforced by the duly constituted authorities, the right to organize and participate in, including the right to control and manage, corporations and associations of such other High Contracting Party for engaging in commercial, manufacturing, processing, scientific, educational, religious and philanthropic activities; provided, however, that neither High Contracting Party shall be obligated to accord within its territories to the nationals, corporations and associations of the other High Contracting Party, treatment with respect to such organization and participation, including the right to control and manage, as favorable as that which is or may hereafter be accorded to its own nationals, corporations and associations.

3. Corporations and associations of either High Contracting Party organized and participated in, including those controlled and those managed, by nationals, corporations and associations of the other High Contracting Party pursuant to the rights and privileges enumerated in the preceding paragraph shall be permitted to engage in and carry on such commercial, manufacturing, processing, scientific, educational, religious and philanthropic [*13] activities within the territories of the High Contracting Party under the laws of which they are organized upon the same terms as corporations and associations of such High Contracting Party organized and participated in, including those controlled and those managed, by its own nationals, corporations and associations, in conformity with the applicable laws and regulations, if any, which are or may hereafter be enforced by the duly constituted authorities.

ARTICLE V n6

n6 See also protocol, p. 785.

Should either High Contracting Party hereafter accord rights in respect of exploration for and exploitation of mineral resources in its territories to nationals, corporations or associations of any third country, such rights shall be accorded to nationals, corporations or associations of the other High Contracting Party, in conformity with the applicable laws and regulations, if any, which are or may hereafter be enforced by the duly constituted authorities.

ARTICLE VI

1. Throughout the whole extent of the territories of [*14] each High Contracting Party the nationals of the other High Contracting Party shall receive the most constant protection and security for their persons and property, and shall enjoy in this respect the full protection and security required by international law. To these ends, persons accused of crime shall be brought to trial promptly, and shall enjoy all the rights and privileges which are or may hereafter be accorded by the laws and regulations enforced by the duly constituted authorities; and nationals of either High Contracting Party, while within the custody of the authorities of the other High Contracting Party, shall receive reasonable and humane treatment. In so far as the term "nationals" where used in this paragraph is applicable in relation to property it shall be construed to include corporations and associations.

2. The property of nationals, corporations and associations of either High Contracting Party shall not be taken within the territories of the other High Contracting Party without due process of law and without the prompt payment of just and effective compensation. The recipient of such compensation shall, in conformity with such applicable laws and regulations [\*15] as are not inconsistent with paragraph 3 of Article XIX of this Treaty, be permitted without interference to withdraw the compensation by obtaining foreign exchange, in the currency of the High Contracting Party of which such recipient is a national, corporation or association, upon the most favorable terms applicable to such currency at the time application therefor is filed, provided application is made within one year after receipt of the compensation to which it relates. The High Contracting Party allowing such withdrawal reserves the right, if it deems necessary, to allow such withdrawal in reasonable instalments over a period not to exceed three years.

3. The nationals, corporations and associations of either High Contracting Party shall throughout the territories of the other High Contracting Party receive protection and security with respect to the matters enumerated in paragraphs 1 and 2 of this Article, upon compliance with the laws and regulations, if any, which are or may hereafter be enforced by the duly constituted authorities, no less than the protection and security which is or may hereafter be accorded to the nationals, corporations and associations of such other [\*16] High Contracting Party and no less than that which is or may hereafter be accorded to the nationals, corporations and associations of any third country.

4. The nationals, corporations and associations of either High Contracting Party shall enjoy freedom of access to the courts of justice and to administrative tribunals and agencies in the territories of the other High Contracting Party, in all degrees of jurisdiction established by law, both in pursuit and in defense of their rights; shall be at liberty to choose and employ lawyers, interpreters and representatives in the prosecution and defense of their rights before such courts, tribunals and agencies; and shall be permitted to exercise all these rights and privileges, in conformity with the applicable laws and regulations, if any, which are or may hereafter be enforced by the duly constituted authorities, on terms no less favorable than the terms which are or may hereafter be accorded to the nationals, corporations and associations of such other High Contracting Party and no less favorable than are or may hereafter be accorded to the nationals, corporations and associations of any third country. Moreover, corporations and associations [\*17] of either High Contracting Party which do not have a permanent establishment, branch or agency within the territories of the other High Contracting Party shall be permitted to exercise the rights and privileges accorded by the preceding sentence upon the filing, at any time prior to appearance before such courts, tribunals or agencies, of reasonable particulars required by the laws and regulations of such other High Contracting Party without any requirement of registration or domestication. In the case of any controversy susceptible of settlement by arbitration, which involves nationals, corporations or associations of both High Contracting Parties and is covered by a written agreement for arbitration, such agreement shall be accorded full faith and credit by the courts within the territories of each High Contracting Party, and the award or decision of the arbitrators shall be accorded full faith and credit by the courts within the territories of the High Contracting Party in which it was rendered, provided the arbitration proceedings were conducted in good faith and in conformity with the agreement for arbitration.

ARTICLE VII

The dwellings, warehouses, factories, shops, and other [\*18] places of business, and all premises thereto appertaining, of the nationals, corporations and associations of either High Contracting Party, located in the territories of the other High Contracting Party, shall not be subject to unlawful entry or molestation. There shall not be made any visit to, or any search of, any such dwellings, buildings or premises, nor shall any books, papers or accounts therein be examined or inspected, except under conditions and in conformity with procedures no less favorable than the conditions and procedures prescribed for nationals, corporations and associations of such other High Contracting Party under laws and regulations enforced by the duly constituted authorities within the territories thereof. In no case shall the nationals, corporations or associations of either High Contracting Party in the territories of the other High Contracting Party be treated less favorably with respect to the foregoing matters than the nationals, corporations or associations of any third country. Any visit, search, examination or inspection which may be permissible under the exception stated in this Article shall be made with due regard for, and in such a way as to cause [\*19] the least possible interference with, the occupants of such dwellings, buildings or premises or the ordinary conduct of any business or other enterprise.

ARTICLE VIII n7

n7 See also protocol, p. 785.

1. The nationals, corporations and associations of either High Contracting Party shall be permitted to acquire, hold and dispose of real and other immovable property throughout the territories of the other High Contracting Party subject to the conditions and requirements as prescribed by the laws and regulations of such other High Contracting Party, and, subject to the provisions of the succeeding sentence, the treatment accorded to such nationals, corporations and associations shall not be less favorable than that accorded to nationals, corporations and associations of any third country. In the case of any state, territory or possession of the United States of America which does not now or does not hereafter permit the nationals, corporations and associations of the Republic of China to acquire, hold or dispose of real [*20] and other immovable property upon the same terms as nationals, corporations and associations of the United States of America, the provisions of the preceding sentence shall not apply. In that case, the Republic of China shall not be obligated to accord to nationals of the United States of America domiciled in, and to corporations and associations of the United States of America created or organized under the laws of, such state, territory or possession treatment more favorable than the treatment which is or may hereafter be accorded within such state, territory or possession to nationals, corporations and associations of the Republic of China.

2. If a national, corporation or association of either High Contracting Party, whether or not resident and whether or not engaged in business or other activities within the territories of the other High Contracting Party, is on account of alienage prevented by the applicable laws and regulations within such territories from succeeding as devisee, or as heir in the case of a national, to real or other immovable property situated therein, or to interests in such property, then such national, corporation or association shall be allowed a term of [*21] three years in which to sell such property or interest, this term to be reasonably prolonged if circumstances render it necessary. The transmission or receipt of such property shall be exempt from the payment of any estate, succession, probate or administrative taxes or charges other or higher than those now or hereafter imposed in like cases upon the nationals, corporations or associations of the High Contracting Party in whose territory the property is or the interests therein are situated. Moreover, such devisee or heir shall, in conformity with such applicable laws and regulations as are not inconsistent with paragraph 3 of Article XIX, be permitted without interference to withdraw the proceeds of the sale of such property, by obtaining foreign exchange, in the currency of the High Contracting Party of which the devisee is a national, corporation or association, or of which the heir is a national, during a period not in excess of three years after application therefor, upon the most favorable terms applicable to such currency at the time application for the withdrawal of such proceeds is filed, provided such application is made within one year after receipt of the proceeds of [*22] sale to which it relates.

3. Nothing in paragraphs 1 and 2 of this Article shall modify or supersede Article IV of the Treaty of January 11, 1943, n8 between the United States of America and the Republic of China for the Relinquishment of Extraterritorial Rights in China and the Regulation of Related Matters or the paragraph relating to that Article in the exchange of notes accompanying that Treaty.

n8 TS 984, *ante*, p. 739.

4. The nationals of either High Contracting Party shall have full power to dispose of personal property of every kind anywhere within the territories of the other High Contracting Party, by testament, donation or otherwise and their heirs, legatees or donees, being persons of whatever nationality or corporations or associations wherever created or organized, whether resident or non-resident and whether or not engaged in business within the territories of the High Contracting Party where such property is situated, shall succeed to such property, and shall be permitted to take possession thereof, [*23] either by themselves or by others acting for them, and to retain or dispose of it at their pleasure, exempt from any restrictions, taxes or charges other or higher than those to which the heirs, legatees or donees of nationals of such other High Contracting Party are or may hereafter be subject in like cases. The nationals, corporations and associations of either High Contracting Party shall be permitted to succeed, as heirs, legatees and donees, to personal property of every kind within the territories of the other High Contracting Party, left or given to them by nationals of such other High Contracting Party or by nationals of any third country, and shall be permitted to take possession thereof, either by themselves or by others acting for them, and to retain or dispose of it at their pleasure, exempt from any restrictions, taxes or charges other or higher than those to which the nationals, corporations and associations of such other High Contracting Party are or may hereafter be subject in like cases. Nothing in this paragraph shall be construed to affect the laws and regulations of either High Contracting Party prohibiting or restricting the direct or indirect ownership by aliens [*24] or foreign corporations and associations of the shares in, or instruments of indebtedness of, corporations and associations of such High Contracting Party carrying on particular types of activities.

5. The nationals, corporations and associations of either High Contracting Party shall, subject to the exception in paragraph 2 of Article X, receive treatment, in respect of all matters which relate to the acquisition, holding, leasing, possession or disposition of personal property, no less favorable than the treatment which is or may hereafter be received by nationals, corporations and associations of any third country.

ARTICLE IX n9

n9 See also protocol, p. 785.

The nationals, corporations and associations of either High Contracting Party shall be accorded within the territory of the other High Contracting Party effective protection in the exclusive use of inventions, trademarks and trade names, upon compliance with the applicable laws and regulations, if any, respecting registration and other formalities which are or [*25] may hereafter be enforced by the duly constituted authorities; unauthorized manufacture, use or sale of such inventions, or imitation or falsification of such trademarks and trade names, shall be prohibited, and effective remedy therefor shall be provided by civil action. The nationals, corporations and associations of either High Contracting Party shall be accorded throughout the territory of the other High Contracting Party effective protection in the enjoyment of rights with respect to their literary and artistic works, upon compliance with the applicable laws and regulations, if any, respecting registration and other formalities which are or may hereafter be enforced by the duly constituted authorities; unauthorized reproduction, sale, diffusion or use of such literary and artistic works shall be prohibited, and effective remedy therefor shall be provided by civil action. In any case, the nationals, corporations and associations of either High Contracting Party shall enjoy, throughout the territories of the other High Contracting Party, all rights and privileges of whatever nature in regard to copyrights, patents, trademarks, trade names, and other literary, artistic and industrial [*26] property, upon compliance with the applicable laws and regulations, if any, respecting registration and other formalities which are or may hereafter be enforced by the duly constituted authorities, upon terms no less favorable than are or may hereafter be accorded to the nationals, corporations and associations of such other High Contracting Party, and, in regard to patents, trademarks, trade names and other industrial property, upon terms no less favorable than are or may hereafter be accorded to the nationals, corporations and associations of any third country.

ARTICLE X

1. The nationals of either High Contracting Party residing within the territories of the other High Contracting Party, and the nationals, corporations and associations of either High Contracting Party engaged in business or in scientific, educational, religious or philanthropic activities within the territories of the other High Contracting Party, shall not be subject to the payment of any internal taxes, fees or charges other or higher than those which are or may hereafter be imposed by laws and regulations enforced by the duly constituted authorities upon the nationals, corporations and associations of such other [*27] High Contracting Party. Moreover, in the case of corporations and associations specified in the preceding sentence, such taxes, fees or charges shall not be imposed upon or measured by any income, property, capital or other criterion of measurement in excess of that reasonably allocable or apportionable to the territories of such other High Contracting Party.

2. The nationals, corporations and associations of either High Contracting Party shall not be subject to the payment of any internal taxes, fees or charges imposed by laws and regulations enforced by the duly constituted authorities within the territories of the other High Contracting Party other or higher than those which are or may hereafter be imposed upon the nationals, residents, corporations and associations of any third country, except that the foregoing provisions of this paragraph shall not apply to any advantage in respect of internal taxes, fees or charges which is or may hereafter be granted to the nationals, residents, corporations or associations of any third country, either (a) pursuant to legislation extending the same advantage to all countries, or to the nationals, residents, corporations or associations thereof, [*28] on the basis of reciprocity, or (b) in a treaty or other agreement concluded with such third country for the avoidance of double taxation or the mutual protection of revenue.

ARTICLE XI

Commercial travelers representing manufacturers, merchants and traders domiciled in the territories of either High Contracting Party shall, on their entry into and sojourn in the territories of the other High Contracting Party and on their departure therefrom, be accorded treatment no less favorable than the treatment which is or may hereafter be accorded to commercial travelers of any third country in respect of customs and other privileges and, subject to the exception in

paragraph 2 of Article X, in respect of all taxes and charges of whatever denomination applicable to them or to their samples.

ARTICLE XII

1. The nationals of either High Contracting Party shall, throughout the territories of the other High Contracting Party, be permitted to exercise liberty of conscience and freedom of worship and to establish schools for the education of their children, and they may, whether individually, collectively or in religious or educational corporations or associations, and without annoyance or molestation [*29] of any kind by reason of their religious belief or otherwise, conduct religious services and give religious or other instruction, either within their own houses or within any other appropriate buildings, provided that their religious and educational activities are not contrary to public morals and that their educational activities are conducted in conformity with the applicable laws and regulations, if any, which are or may hereafter be enforced by the duly constituted authorities.

2. The nationals of either High Contracting Party shall be permitted within the territories of the other High Contracting Party to bury their dead according to their religious customs in suitable and convenient places which are or may hereafter be established and maintained for the purpose, subject to the mortuary and sanitary laws and regulations, if any, which are or may hereafter be enforced by the duly constituted authorities.

3. Places of worship and cemeteries shall be held in respect and free from disturbance or profanation.

ARTICLE XIII

With respect to that form of protection granted within the territories of either High Contracting Party by the applicable laws establishing civil liability for bodily [*30] injuries or for death, and giving to relatives or heirs or dependents of an injured person a right of action or a pecuniary compensation, such relatives or heirs or dependents of the injured person, himself a national of either High Contracting Party and injured within any of the territories of the other High Contracting Party, shall, regardless of their alienage or residence outside of the territory where the injury occurred, enjoy the same rights and privileges as are or may hereafter be granted under like conditions to nationals of such other High Contracting Party.

ARTICLE XIV

1. The nationals of each High Contracting Party shall be exempt from compulsory military or naval training or service under the jurisdiction of the other High Contracting Party, and shall also be exempt from all contributions in money or in kind imposed in lieu thereof.

2. During any period of time when both of the High Contracting Parties are, through military or naval action in connection with which there is general compulsory military or naval service, (a) enforcing measures against the same third country or countries in pursuance of obligations for the maintenance of international peace and security, [*31] or (b) concurrently conducting hostilities against the same third country or countries, provisions of paragraph 1 of this Article shall not apply. However, in such an event the nationals of either High Contracting Party in the territory of the other High Contracting Party, who have not declared their intention to acquire the nationality of such other High Contracting Party, shall be exempt from military or naval service under the jurisdiction of such other High Contracting Party if within a reasonable time prior to their induction for such service they elect, in lieu of such service, to enter the military or naval service of the High Contracting Party of which they are nationals. In any such situation the High Contracting Parties will make the necessary arrangements for giving effect to the provisions of this paragraph.

3. Nothing in this Article shall be construed to affect the right of either High Contracting Party to debar from acquiring its citizenship any person who seeks and obtains exemption in accordance with the provisions of paragraph 1 or 2 of this Article.

ARTICLE XV n10

n10 See also exchange of notes dated Nov. 29, 1948 (TIAS 1871), *post*, p. 846.

[*32]

The High Contracting Parties reaffirm their adherence to a program of purposes and policies, open to participation by all other countries of like mind, designed to bring about an expansion of international trade on a broad basis, and

directed to the elimination of all forms of discriminatory treatment and monopolistic restrictions in international commerce.

ARTICLE XVI

1. In all matters relating to (a) customs duties and subsidiary charges of every kind imposed on imports or exports and the method of levying such duties and charges, (b) the rules, formalities, and charges imposed in connection with the clearing of articles through the customs, and (c) the taxation, sale, distribution or use within the country of imported articles and of articles intended for exportation, each High Contracting Party shall accord to articles the growth, produce or manufacture of the other High Contracting Party, from whatever place arriving, or to articles destined for exportation to the territories of such other High Contracting Party, by whatever route, treatment no less favorable than the treatment which is or may hereafter be accorded to like articles the growth, produce or manufacture of, or destined [*33] for, any third country. If the Government of either High Contracting Party requires documentary proof of origin of imported articles, the requirements imposed therefor shall be reasonable and shall not be such as to constitute an unnecessary hindrance to indirect trade.

2. With respect to the matters referred to in paragraph 1 of this Article, the nationals, corporations and associations, vessels and cargoes of either High Contracting Party shall be accorded, within the territories of the other High Contracting Party, treatment no less favorable than is or may hereafter be accorded to the nationals, corporations and associations, vessels and cargoes of any third country. In all matters relating to (a) customs duties and subsidiary charges of every kind imposed on imports or exports and the method of levying such duties and charges, (b) the rules, formalities, and charges imposed in connection with the clearing of articles through the customs, and (c) taxation within the country of imported articles and of articles intended for exportation, the nationals, corporations and associations of either High Contracting Party shall be accorded, within the territories of the other High Contracting [*34] Party, treatment no less favorable than the treatment which is or may hereafter be accorded to the nationals, corporations and associations of such other High Contracting Party.

3. No prohibition or restriction of any kind shall be imposed by either High Contracting Party on the importation, sale, distribution or use of any article the growth, produce or manufacture of the other High Contracting Party, or on the exportation of any article destined for the territories of the other High Contracting Party, unless the importation, sale, distribution or use of the like article the growth, produce or manufacture of all third countries, or the exportation of the like article to all third countries, respectively, is similarly prohibited or restricted.

4. If the Government of either High Contracting Party imposes any quantitative regulation on the importation or exportation of any article, or on the sale, distribution or use of any imported article, it shall as a customary practice give public notice of the total quantity or value of such article permitted to be imported, exported, sold, distributed or used during a specified period, and of any change in such quantity or value. Furthermore, [*35] if either High Contracting Party allots a share of such total quantity or value to any third country, it shall allot to the other High Contracting Party, with respect to any article in which the latter has an important interest, unless it is mutually agreed to dispense with such an allotment, a share based upon the proportion of the total quantity or value supplied by, or in the case of exports a share based upon the proportion exported to, the territories of such other High Contracting Party during a representative period, account being taken in so far as practicable of any special factors which may have affected or may be affecting the trade in that article. The provisions of this paragraph relating to imported articles shall also apply in respect of limitations upon the quantity or value of any article permitted to be imported free of duty or tax, or at a specified rate of duty or tax.

ARTICLE XVII

1. Laws, regulations of administrative authorities and decisions of administrative or judicial authorities of each High Contracting Party pertaining to the classification of articles for customs purposes or to rates of duty shall be published promptly in such a manner as to enable traders [*36] to become acquainted with them. Such laws, regulations and decisions shall be applied uniformly at all ports of the respective High Contracting Parties except as is or may hereafter be otherwise specifically provided for in statutes of either High Contracting Party with respect to the importation of articles into its insular territories and possessions.

2. No administrative ruling by the Government of either High Contracting Party effecting advances in rates of duties or charges applicable under an established and uniform practice to imports originating in the territories of the other High Contracting Party, or imposing any new requirement with respect to such importations, shall as a general rule be applied to articles the growth, produce or manufacture of the other High Contracting Party already en route at the time

of publication thereof in accordance with paragraph 1; provided that, if either High Contracting Party customarily exempts from such new or increased obligations articles entered for consumption or withdrawn from warehouse for consumption during a period of thirty days after the date of such publication, such practice shall be considered full compliance with this paragraph. [*37] The provisions of this paragraph shall not apply to administrative orders imposing antidumping duties, or relating to regulations for the protection of human, animal or plant life or health, or relating to public safety, or giving effect to judicial decisions.

3. Each High Contracting Party shall provide some procedure, administrative, judicial or otherwise, under which the nationals, corporations and associations of the other High Contracting Party, and importers of articles the growth, produce or manufacture of such other High Contracting Party, shall be permitted to appeal against fines and penalties imposed upon them by the customs authorities, confiscations by such authorities and rulings of such authorities on questions of customs classification and of valuation of articles for customs purposes. Greater than nominal penalties shall not be imposed by either High Contracting Party in connection with any importation by the nationals, corporations or associations of the other High Contracting Party, or in connection with the importation of articles the growth, produce or manufacture of such other High Contracting Party, because of errors in documentation which are obviously clerical [*38] in origin or with regard to which good faith can be established.

4. The Government of each High Contracting Party will accord sympathetic consideration to such representations as the Government of the other High Contracting Party may make with respect to the operation or administration of import or export prohibitions or restrictions, quantitative regulations, customs regulations or formalities, or sanitary laws or regulations for the protection of human, animal or plant life or health.

ARTICLE XVIII n11

n11 See also protocol, p. 786.

1. Articles the growth, produce or manufacture of either High Contracting Party, imported into the territories of the other High Contracting Party, shall be accorded treatment with respect to all matters affecting internal taxation no less favorable than the treatment which is or may hereafter be accorded to like articles the growth, produce or manufacture of such other High Contracting Party.

2. Articles grown, produced or manufactured within the territories of either High Contracting [*39] Party in whole or in part by nationals, corporations and associations of the other High Contracting Party, or by corporations and associations organized or participated in by such nationals, corporations and associations, shall be accorded within such territories treatment with respect to all matters affecting internal taxation, or exportation from such territories, no less favorable than the treatment which is or may hereafter be accorded to like articles grown, produced or manufactured therein in whole or in part by nationals, corporations and associations of the High Contracting Party within the territories of which the articles are grown, produced or manufactured, or by corporations and associations organized or participated in by such nationals, corporations and associations. The articles specified in the preceding sentence shall not in any case receive treatment less favorable than the treatment which is or may hereafter be accorded to like articles grown, produced or manufactured in whole or in part by nationals, corporations and associations of any third country, or by corporations and associations organized or participated in by such nationals, corporations and associations. [*40]

ARTICLE XIX n11

1. If the Government of either High Contracting Party establishes or maintains any form of control of the means of international payment or of international financial transactions, it shall accord fair and equitable treatment to the nationals, corporations and associations and commerce of the other High Contracting Party with respect to all aspects of such control.

2. The Government establishing or maintaining such control shall impose no prohibition, restriction or delay on the transfer of payment for any article the growth, produce or manufacture of the other High Contracting Party which is not imposed on the transfer of payment for the like article the growth, produce or manufacture of any third country. With respect to the rates of exchange and with respect to taxes or charges on exchange transactions, articles the growth, produce or manufacture of the other High Contracting Party shall be accorded treatment no less favorable than the treatment which is or may hereafter be accorded to like articles the growth, produce or manufacture of any third country. The provisions of this paragraph shall also extend to the application of such control to payments necessary [*41] for or

incidental to the importation of articles the growth, produce or manufacture of the other High Contracting Party. In general, any such control shall be administered so as not to influence to the disadvantage of the other High Contracting Party the competitive relationships between articles the growth, produce or manufacture of such other High Contracting Party and like articles the growth, produce or manufacture of any third country.

3. In all that relates to the transfer of profits, dividends, interest, payments for imported articles, and of other funds, to loans and to any other international financial transactions, either between the territories of the two High Contracting Parties or between the territories of the High Contracting Party the Government of which establishes or maintains the control referred to in paragraph 1 of this Article and the territories of any third country, the Government establishing or maintaining the control shall accord to the nationals, corporations and associations of the other High Contracting Party treatment no less favorable than the treatment which is or may hereafter be accorded to its own nationals, corporations and associations, and no [*42] less favorable than the treatment which is or may hereafter be accorded to the nationals, corporations and associations of any third country which make or receive like transfers and loans, and which are parties to like transactions, between the territories of the same two countries. Moreover, the Government establishing or maintaining such control shall accord to the nationals, corporations and associations of the other High Contracting Party, in all that relates to any such transfers, loans and other transactions between the territories of the two High Contracting Parties, treatment no less favorable than the treatment which is or may hereafter be accorded to the nationals, corporations and associations of any third country which make or receive like transfers and loans, and which are parties to like transactions, between the territories of the High Contracting Party the Government of which establishes or maintains the control and the territories of such third country. The treatment accorded by this paragraph shall apply to the rates of exchange and to any prohibition, restriction, delay, tax or other charge on the transfers, loans and other transactions covered by this paragraph; [*43] and such treatment shall apply whether the transfers, loans and other transactions take place directly or through an intermediary or intermediaries in a country or countries not parties to this Treaty. In general, any such control shall be administered so as not to influence to the disadvantage of the other High Contracting Party the competitive relationships between the nationals, corporations and associations of such other High Contracting Party and the nationals, corporations and associations of any third country.

ARTICLE XX n12

n12 See also protocol, p. 786.

1. If the Government of either High Contracting Party establishes or maintains a monopoly or public agency for the importation, exportation, purchase, sale, distribution or production of any article, or grants exclusive privileges to any agency to import, export, purchase, sell, distribute or produce any article, such monopoly or agency shall accord to the commerce of the other High Contracting Party fair and equitable treatment in respect of its purchases of [*44] articles the growth, produce or manufacture of foreign countries and its sales of articles destined for foreign countries. To this end the monopoly or agency shall, in making such purchases or sales of any article, be influenced solely by considerations, such as price, quality, marketability, transportation and terms of purchase or sale, which would ordinarily be taken into account by a private commercial enterprise interested solely in purchasing or selling such article on the most favorable terms. If the Government of either High Contracting Party establishes or maintains a monopoly or agency for the sale of any service or grants exclusive privileges to any agency to sell any service, such monopoly or agency shall accord fair and equitable treatment to the other High Contracting Party and to the nationals, corporations, associations and commerce thereof in respect of transactions involving such services as compared with the treatment which is or may hereafter be accorded to any third country and to the nationals, corporations, associations and commerce thereof.

2. The Government of each High Contracting Party, in the awarding of concessions and other contracts, and in the purchasing [*45] of supplies, shall accord fair and equitable treatment to the nationals, corporations and associations and to the commerce of the other High Contracting Party as compared with the treatment which is or may hereafter be accorded to the nationals, corporations and associations and to the commerce of any third country.

ARTICLE XXI

1. Between the territories of the High Contracting Parties there shall be freedom of commerce and navigation.

2. Vessels under the flag of either High Contracting Party, and carrying the papers required by its national law in proof of nationality, shall be deemed to be vessels of that High Contracting Party both within the ports, places and waters of the other High Contracting Party and on the high seas. As used in this Treaty, "vessels" shall be construed to in-

clude all vessels of either High Contracting Party whether privately owned or operated or publicly owned or operated. However, the provisions of this Treaty other than this paragraph and paragraph 5 of Article XXII shall not be construed to accord rights to vessels of war or fishing vessels of the other High Contracting Party; nor shall they be construed to extend to the nationals, corporations and associations, [*46] vessels and cargoes of, or to articles the growth, produce or manufacture of, such other High Contracting Party any special privileges restricted to national fisheries or to the products thereof.

3. The vessels of either High Contracting Party shall have liberty, equally with the vessels of any third country, to come with their cargoes to all ports, places and waters of the other High Contracting Party which are or may hereafter be open to foreign commerce and navigation.

ARTICLE XXII

1. The vessels and cargoes of either High Contracting Party shall, within the ports, places and waters of the other High Contracting Party, in all respects be accorded treatment no less favorable than the treatment accorded to the vessels and cargoes of such other High Contracting Party, irrespective of the port of departure or the port of destination of the vessel, and irrespective of the origin or the destination of the cargo.

2. No duties of tonnage, harbor, pilotage, lighthouse, quarantine, or other similar or corresponding duties or charges, of whatever kind or denomination, levied in the name or for the profit of the government, public functionaries, private individuals, corporations or establishments [*47] of any kind, shall be imposed in the ports, places and waters of either High Contracting Party upon the vessels of the other High Contracting Party, which shall not equally and under the same conditions be imposed upon national vessels.

3. No charges upon passengers, passenger fares or tickets, freight moneys paid or to be paid, bills of lading, contracts of insurance or re-insurance, no conditions relating to the employment of ship brokers, of whatever nationality, and no other charges or conditions of any kind, shall be imposed in a way tending to accord any advantage to vessels of either High Contracting Party as compared with the vessels of the other High Contracting Party.

4. Within the ports, places and waters of each High Contracting Party which are or may hereafter be open to foreign commerce and navigation, competent pilots shall be made available to take the vessels of the other High Contracting Party into and out of such ports, places and waters.

5. If a vessel of either High Contracting Party shall be forced by stress of weather or by reason of any other distress to take refuge in any of the ports, places or waters of the other High Contracting Party not open to foreign [*48] commerce and navigation, it shall receive friendly treatment and assistance and such supplies and materials for repair as may be necessary and available. This paragraph shall apply to vessels of war and fishing vessels, as well as to vessels as defined in paragraph 2 of Article XXI.

6. In no case shall the treatment accorded to the vessels and cargoes of either High Contracting Party with respect to the matters referred to in this Article be less favorable than the treatment which is or may hereafter be accorded to the vessels and cargoes of any third country.

ARTICLE XXIII

1. It shall be permissible, in the vessels of either High Contracting Party, to import into the territories of the other High Contracting Party, or to export therefrom, all articles which it is or may hereafter be permissible to import into such territories, or to export therefrom, in the vessels of such other High Contracting Party, without being liable to any other or higher duties or charges whatsoever than if such articles were imported or exported in vessels of such other High Contracting Party.

2. Bounties, drawbacks and other privileges of this nature of whatever kind or denomination which are or may hereafter [*49] be allowed, in the territories of either High Contracting Party, on articles imported or exported in national vessels shall also and in like manner be allowed on articles imported or exported in vessels of the other High Contracting Party.

ARTICLE XXIV

1. Vessels of either High Contracting Party shall be permitted to discharge portions of cargoes at any ports, places or waters of the other High Contracting Party which are or may hereafter be open to foreign commerce and navigation, and to proceed with the remaining portions of such cargoes to any other such ports, places or waters, without paying

other or higher tonnage dues or port charges in such cases than would be paid by national vessels in like circumstances, and they shall be permitted to load in like manner, in the same voyage outward, at the various ports, places and waters which are or may hereafter be open to foreign commerce and navigation. The vessels and cargoes of either High Contracting Party shall be accorded, with respect to the matters referred to in this paragraph, treatment in the ports, places and waters of the other High Contracting Party no less favorable than the treatment which is or may hereafter be accorded [*50] to the vessels and cargoes of any third country.

2. Should either High Contracting Party accord the rights of inland navigation or coasting trade to vessels of any third country such rights would similarly be accorded to the vessels of the other High Contracting Party. The coasting trade and inland navigation of each High Contracting Party are excepted from the requirement of national treatment and are to be regulated according to the laws of each High Contracting Party in relation thereto. It is agreed, however, that vessels of either High Contracting Party shall enjoy within the territory of the other High Contracting Party with respect to the coasting trade and inland navigation treatment as favorable as the treatment accorded to the vessels of any third country. Trade between either High Contracting Party and its insular territories or possessions shall be considered coasting trade within the meaning of this paragraph.

ARTICLE XXV

There shall be freedom of transit through the territories of each High Contracting Party by the routes most convenient for international transit (a) for persons, whether or not they are nationals of the other High Contracting Party, together with their [*51] baggage, directly or indirectly coming from or going to the territories of such other High Contracting Party, (b) for persons who are nationals of the other High Contracting Party, together with their baggage, regardless of whether they are coming from or going to the territories of such other High Contracting Party, and (c) for articles directly or indirectly coming from or going to the territories of such other High Contracting Party. Such persons, baggage and articles in transit shall not be subject to any transit duty, to any unnecessary delays or restrictions, or to any discrimination in respect to charges, facilities or any other matter; and all charges and regulations prescribed in respect of such persons, baggage or articles shall be reasonable, having regard to the conditions of the traffic. Except as may hereafter be agreed by the High Contracting Parties with respect to nonstop flight by aircraft, the Government of either High Contracting Party may require that such baggage and articles be entered at the proper customhouse and that they be kept in customs custody whether or not under bond; but such baggage and articles shall be exempt from all customs duties or similar [*52] charges if such requirements for entry and retention in customs custody are complied with and if they are exported within one year and satisfactory evidence of such exportation is presented to the customs authorities. Such nationals, baggage, persons and articles shall be accorded treatment with respect to all charges, rules and formalities in connection with transit no less favorable than the treatment accorded to the nationals of any third country, together with their baggage, or to persons and articles coming from or going to the territories of any third country.

ARTICLE XXVI n13

n13 See also protocol, p. 786, and exchange of notes, *post*, p. 848.

1. Nothing in this Treaty shall be construed to prevent the adoption or enforcement of measures:

(a) relating to the importation or exportation of gold or silver;

(b) relating to the traffic in arms, ammunition and implements of war, and, in exceptional circumstances, all other military supplies;

(c) relating to the exportation of national treasures of historical, archaeological [*53] or artistic value;

(d) necessary in pursuance of obligations for the maintenance of international peace and security, or for the protection of the essential interests of the country in time of national emergency; or

(e) imposing exchange restrictions in conformity with the Articles of Agreement of the International Monetary Fund, signed December 27, 1945, n14 so long as the High Contracting Party imposing the restrictions is a member of the Fund, provided that neither High Contracting Party shall utilize its privileges under section 3 of Article VI or section 2 of Article XIV of such Agreement in such a manner as to impair any of the provisions of this Treaty.

n14 TIAS 1501, *ante*, vol. 3, p. 1351.

2. Subject to the requirement that, under like circumstances and conditions, there shall be no arbitrary discrimination by either High Contracting Party against the other High Contracting Party or against the nationals, corporations, associations, vessels or commerce thereof, in favor of any third country or the nationals, [*54] corporations, associations, vessels or commerce thereof, the provisions of this Treaty shall not extend to prohibitions or restrictions:

(a) imposed on moral or humanitarian grounds;

(b) designed to protect human, animal, or plant life or health;

(c) relating to prison-made goods; or

(d) relating to the enforcement of police or revenue laws.

3. The provisions of this Treaty according treatment no less favorable than the treatment accorded to any third country shall not apply to:

(a) advantages which are or may hereafter be accorded to adjacent countries in order to facilitate frontier traffic;

(b) advantages accorded by virtue of a customs union of which either High Contracting Party may, after consultation with the Government of the other High Contracting Party, become a member so long as such advantages are not extended to any country which is not a member of such customs union; or

(c) advantages accorded to third countries pursuant to a multilateral convention of general applicability, including a trade area of substantial size, having as its objective the liberalization and promotion of international trade or other international economic intercourse, and open to adoption by all [*55] the United Nations.

4. The stipulations of this Treaty do not extend to advantages now accorded or which may hereafter be accorded by the United States of America, its territories or possessions or the Panama Canal Zone to one another, to the Republic of Cuba, or to the Republic of the Philippines. The provisions of this paragraph shall continue to apply in respect of any advantages which are or may hereafter be accorded by the United States of America, its territories or possessions or the Panama Canal Zone to one another, irrespective of any change which may take place in the political status of any of the territories or possessions of the United States of America.

5. The provisions of this Treaty shall not be construed to accord any rights or privileges to corporations and associations engaged in political activities or with respect to the organization of or participation in such corporations and associations. Moreover, each High Contracting Party reserves the right to deny any of the rights and privileges accorded by this Treaty to any corporation or association created or organized under the laws and regulations of the other High Contracting Party which is directly or indirectly [*56] owned or controlled, through majority stock ownership or otherwise, by nationals, corporations or associations of any third country or countries.

ARTICLE XXVII n15

n15 See also exchange of notes, *post*, p. 846.

Subject to any limitation or exception provided in this Treaty or hereafter agreed upon between the Governments of the High Contracting Parties, the territories of the High Contracting Parties to which the provisions of this Treaty extend shall be understood to comprise all areas of land and water under the sovereignty or authority of either High Contracting Party, except the Panama Canal Zone.

ARTICLE XXVIII

Any dispute between the Governments of the two High Contracting Parties as to the interpretation or the application of this Treaty, which the High Contracting Parties can not satisfactorily adjust by diplomacy, shall be submitted to the International Court of Justice unless the High Contracting Parties shall agree to settlement by some other pacific means.

ARTICLE XXIX

1. This Treaty shall, upon its entry [*57] into force, supersede provisions of the following treaties between the United States of America and the Republic of China in so far as such provisions have not previously been terminated:

(a) Treaty of Peace, Amity and Commerce, signed at Wang Hea, July 3, 1844; n16

(b) Treaty of Peace, Amity and Commerce, signed at Tientsin, June 18, 1858; n17

(c) Treaty Establishing Trade Regulations and Tariff, signed at Shanghai, November 8, 1858; n18

(d) Treaty of Trade, Consuls and Emigration, signed at Washington, July 28, 1868; n19

(e) Immigration Treaty, signed at Peking, November 17, 1880; n20

(f) Treaty as to Commercial Intercourse and Judicial Procedure, signed at Peking, November 17, 1880; n21

(g) Treaty as to Commercial Relations, signed at Shanghai, October 8, 1903; n22

(h) Treaty Establishing Rates of Duty on Imports Into China, signed at Washington, October 20, 1920; n23 and

(i) Treaty Regulating Tariff Relations, signed at Peiping, July 25, 1928. n24

n16 TS 45, *ante*, p. 647.

n17 TS 46, *ante*, p. 659.

n18 TS 47, *ante*, p. 671.

n19 TS 48, *ante*, p. 680.

n20 TS 49, *ante*, p. 685.

[*58]

n21 TS 50, *ante*, p. 688.

n22 TS 430, *ante*, p. 695.

n23 TS 657, *ante*, p. 716.

n24 TS 773, *ante*, p. 721.

2. Nothing in this Treaty shall be construed to limit or restrict in any way the rights, privileges and advantages accorded by the Treaty for the Relinquishment of Extraterritorial Rights in China and the Regulation of Related Matters and accompanying exchange of notes between the United States of America and the Republic of China signed at Washington on January 11, 1943.

ARTICLE XXX

1. This Treaty shall be ratified, and the ratifications thereof shall be exchanged at Nanking as soon as possible.

2. This Treaty shall enter into force on the day of the exchange of ratifications, and shall continue in force for a period of five years from that day.

3. Unless one year before the expiration of the aforesaid period of five years the Government of either High Contracting Party shall have given notice to the Government of the other High Contracting Party of intention to terminate

this Treaty upon the expiration of the aforesaid period, the Treaty shall continue in force thereafter [*59] until one year from the date on which notice of intention to terminate it shall have been given by either High Contracting Party.

IN WITNESS WHEREOF the respective Plenipotentiaries have signed this Treaty and have affixed hereunto their seals.

DONE in duplicate, in the English and Chinese languages, both equally authentic, at Nanking, this fourth day of November, one thousand nine hundred forty-six, corresponding to the fourth day of the eleventh month of the thirty-fifth year of the Republic of China.

PROTOCOL

At the moment of signing this day the Treaty of Friendship, Commerce and Navigation between the United States of America and the Republic of China, the undersigned Plenipotentiaries have agreed upon the present Protocol which shall have the same validity as if provisions were inserted in the text of the Treaty to which it refers:

1. The provisions of Article II, paragraph 1, shall not be deemed to affect the right of either High Contracting Party to enforce statutes prescribing reasonable requirements concerning the registration of aliens within its territories, it being understood that identity cards which are now or may hereafter be required by the duly constituted authorities [*60] of such High Contracting Party shall be valid throughout the entire extent of the territories of that High Contracting Party, and that treatment accorded to nationals of such other High Contracting Party with respect to such requirements shall not be less favorable than that accorded to nationals of any third country.

2. (a) Without prejudice to rights given elsewhere in the Treaty, Article II, paragraph 2, refers only to rights and privileges to be enjoyed by nationals of either High Contracting Party as individuals, and shall not be construed to imply the right of such nationals to form corporations or associations on the same terms as nationals of the other High Contracting Party.

(b) The words "not forbidden by the laws and regulations enforced by the duly constituted authorities", as used in Article II, paragraph 2, shall be construed to mean such prohibitory laws and regulations as are applicable alike to nationals of the country and to nationals of the other High Contracting Party.

3. Rights in respect of "exploration for and exploitation of" mineral resources as referred to in Article V shall be construed to mean the rights to conduct mining enterprises and operations, as [*61] distinct from the ownership by nationals, corporations or associations of one High Contracting Party of interests in corporations or associations of the other High Contracting Party which are or may be engaged in mining operations in the territory of such other High Contracting Party.

4. The provisions of Article VIII, paragraph 1, shall not be construed to limit in any way rights or privileges accorded in other provisions of the Treaty with respect to real or other immovable property.

5. (a) The word "unauthorized", as used in Article IX, shall be construed to mean unauthorized by the owner of the industrial, literary or artistic property in any given case.

(b) The provision in the first sentence and in the second sentence of Article IX, that "effective remedy therefor shall be provided by civil action" shall not be construed to preclude remedies by other than civil action if such remedies are provided for by laws and regulations which are or may hereafter be enforced by the duly constituted authorities.

(c) So long as the laws and regulations of either High Contracting Party do not accord to its own nationals, corporations and associations protection against translations, the provisions [*62] of the third sentence of Article IX shall not be construed to obligate that High Contracting Party to accord to nationals, corporations or associations of the other High Contracting Party protection against translations. n25

n25 For a U.S. reservation and understandings, see footnote 1, p. 761.

6. Without prejudice to rights which are otherwise enjoyed or may hereafter be enjoyed, the word "grown" as used in Article XVIII, paragraph 2, shall not be construed to confer any right upon nationals, corporations or associations of either High Contracting Party to engage in agriculture within the territories of the other High Contracting Party.

7. The words "international financial transactions", as used in Article XIX, paragraph 3, shall be construed to include importation or exportation of paper money and governmental securities, it being understood that each High Contracting Party retains the right to adopt or enforce measures relating to such importation or exportation, provided the measures do not discriminate against [*63] nationals, corporations and associations of the other High Contracting Party in a manner contrary to the provisions of that paragraph.

8. The concluding sentence of paragraph 1 of Article XX shall not be construed to apply to postal services.

9. The words "gold or silver", as used in Article XXVI, paragraph 1, shall be construed to include bullion and coin.

10. Advantages which are or may hereafter be accorded by the United States of America, its territories or possessions or the Panama Canal Zone to one another or the Republic of Cuba or to the Republic of the Philippines as stipulated in Article XXVI, paragraph 4, whenever extended to any other country, shall similarly be extended to the Republic of China.

**SIGNATORIES:**
J. LEIGHTON STUART

[SEAL]

ROBERT LACY SMYTH

[SEAL]

WANG SHIH-CHIEH

[SEAL]

WANG HUA-CHENG

[SEAL]