## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| STRATEGIC TECHNOLOGIES PTE, LTD., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 05-2311 (RMC) ) |
| REPUBLIC OF CHINA (TAIWAN), | ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION

Strategic Technologies PTE, Ltd. ("Strategic Tech") filed this complaint seeking to enforce a judgment rendered in Singapore in favor of Strategic Tech and against the Republic of China on Taiwan (the "ROC").  The First Amended Complaint invokes jurisdiction under the implied-waiver and commercial-activities exceptions to sovereign immunity set forth in the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611 ("FSIA").  The ROC filed a motion to dismiss for lack of subject matter jurisdiction, arguing that the exceptions do not apply in this case.  The Court agrees and will grant the ROC's motion to dismiss.

### I.  BACKGROUND

Strategic Tech is a Singapore limited liability company.  Am. Compl. ¶ 2.  Strategic Tech entered into a commercial contract ("Contract") with the ROC.[1]  See Pl.'s Mem. in Opp. to

---

[1] The ROC had awarded a contract to Strategic Tech to supply an "Underground Test Range Measuring System . . . to the 205th Arsenal."  Raynes Decl. Ex. A, Aff. of Lu Sheau-Chia at 2.

Def.'s Mot. to Dismiss ("Pl.'s Opp."), Raynes Decl. Ex. A, Contract.  The Contract provided that any disputes between the parties would be submitted to arbitration[2] and that the arbitration decision would be final and binding.  *Id*., Contract ¶¶ 25.1 & 25.4.  The Contract also provided that (1) if Strategic Tech initiated the arbitration, the dispute would be arbitrated in Taipei, ROC in accordance with ROC law and (2) if the ROC initiated the arbitration, the dispute would be arbitrated in Singapore in accordance with Singapore law.  *Id*., Contract ¶ 25.2.

Apparently, a dispute arose between the parties, and Strategic Tech brought suit against the ROC in the High Court of the Republic of Singapore (the "Singapore Court").[3]  The Singapore Court rendered a judgment in favor of Strategic Tech and against the ROC as follows:

> $1,573,510.40 (U.S. dollars) plus 6% interest per year from July 22, 1998 to the date of judgment;
>
> The U.S. dollar equivalent of S$10,693.00 (Singapore dollars) plus interest of 6% per year  from July 22, 1998 to the date of judgment; and
>
> The U.S. dollar equivalent of S$7,425.00 (Singapore dollars), representing costs and disbursements.

---

[2] Paragraph 25.1 of the Contract provided:

> All disputes, claims or controversies arising under or in connection with the Contract shall be reduced in writing by the disputing party and notified to the other party.  The decision of the disputing party contained in such notice shall be final and conclusive unless within thirty (30) days from the receipt of such notice the other party furnishes to the disputing party written rejection thereof, in which case the disagreement will be submitted to arbitration

[3] The pleadings do not indicate the nature of the dispute, whether it arose under the Contract, or why Strategic Tech filed suit in Singapore instead of submitting the matter to arbitration in the ROC, as provided in paragraph 25.2 of the Contract.

Am. Compl. ¶ 17; *see* Compl. Ex. A, Judgment ("Judgment").[4] By bringing suit here, Strategic Tech seeks to enforce the Judgment against the ROC in the United States.

## II. LEGAL STANDARD

A court may dismiss a complaint for lack of subject matter jurisdiction only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Empagran S.A. v. F. Hoffman-Laroche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *Rasul v. Bush*, 215 F. Supp. 2d 55, 61 (D.D.C. 2002) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)).

Because subject matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Moreover, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Instead, to determine whether it has jurisdiction over the claim, the court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Scis.*,

---

[4] While the Amended Complaint refers to the Judgment as Exhibit A, Strategic Tech failed to attach it. The Judgment is attached as Exhibit A to the original Complaint. As set forth on the Judgment, the named plaintiff in that action was Strategic Tech and the named defendants were the Development Bank of Singapore and the Procurement Bureau of the Republic of China Ministry of National Defense. *See* Compl. Ex. A, Judgment.

974 F.2d 192, 197 (D.C. Cir. 1992).

### III. ANALYSIS

A foreign state is immune from the jurisdiction of U.S. courts unless the suit comes within an exception to FSIA. *Saudi Arabia v. Nelson*, 507 U.S. 349, 356 (1993); *Creighton Ltd. v. Government of the State of Qatar*, 181 F.3d 118, 122 (D.C. Cir. 1999). Strategic Tech claims that the implied-waiver exception and the commercial-activities exception apply. The ROC bears the burden of proving that Strategic Tech's allegations do not bring this case within an exception to immunity. *See Gulf Res. of Am., Inc. v. Republic of the Congo*, 370 F.3d 65, 70 (D.C. Cir. 2004) (burden of proof rests upon sovereign state claiming immunity).

### A. Implied-Waiver Exception

Under FSIA, a foreign state is not immune from suit when it has waived such immunity. "A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case — (1) in which the foreign state has waived its immunity either explicitly or *by implication*." 28 U.S.C. § 1605(a)(1) (emphasis added). The implied-waiver exception is construed narrowly — that is, the implied-waiver exception applies only where there is evidence that the foreign state actually intended to waive its immunity. *Creighton*, 181 F.3d at 122; *accord Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 444 (D.C. Cir. 1990) ("courts rarely find that a nation has waived its sovereign immunity . . . without strong evidence that this is what the foreign state intended").

Strategic Tech claims that the ROC implicitly waived sovereign immunity by agreeing to arbitrate in Singapore in accordance with Singapore law. Even though there is some legislative history that supports this proposition, *see* H.R. Rep. No. 94-1487, at 18 (1976), *reprinted in* 1976

-4-

U.S.C.A.N. 6604, 6617 ("courts have found waivers in cases where a foreign state has agreed to arbitration in another country"), the D.C. Circuit has rejected this broad reading of the implied-waiver exception.

> [I]f the language of the legislative history [were] applied literally, a foreign government would be subject to the United States's jurisdiction simply because it agreed to have the contract governed by another country's laws, or agreed to arbitrate in a country other than itself, even though the agreement made no reference to the United States. Such an interpretation of § 1605(a)(1)'s "implicit waiver" exception would vastly increase the jurisdiction of the federal courts over matters involving sensitive foreign relations.

*Creighton*, 181 F.3d at 122 (quoting *Seetransport Wiking Trader v. Navimpex Centrala*, 989 F.2d 572, 577 (2d Cir. 1993)). "[M]ost courts refuse to find an implicit waiver of immunity to suit in American courts from a contract clause providing for arbitration in a country other than the United States." *Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370, 377 (7th Cir. 1985).

*Creighton* is substantially similar to this case. In *Creighton*, a foreign contractor sought to enforce an arbitration award against the government of Qatar. 181 F.3d at 120. An arbitration award had been rendered by the International Chamber of Commerce in Paris, France against Qatar. *Id*. The plaintiff contractor claimed that Qatar had implicitly waived sovereign immunity by agreeing to arbitrate in France. *Id*. at 122. Waiver was further proven, the plaintiff claimed, because France and the United States were signatories to the New York Convention, a treaty providing for the enforcement of arbitral awards made in one State where enforcement is sought in another. *Id*. at 121. The D.C. Circuit rejected the plaintiff's arguments, because Qatar did not sign the New York Convention and because arbitration in a State that was a signatory (France) did not constitute waiver of sovereign immunity in the United States. The D.C. Circuit explained, "Qatar not having signed the Convention, we do not think that its agreement to arbitrate in a signatory

country, without more, demonstrates the requisite intent to waive its sovereign immunity in the United States." *Id.* at 123.

Like Qatar, the ROC is not a signatory to the New York Convention. *See* Pl.'s Opp. to First Mot. to Dismiss at 5 n.3 (Strategic Tech concedes that the ROC is not a signatory). [5] Just as Qatar did not waive sovereign immunity by agreeing to arbitrate in France, the ROC did not waive sovereign immunity by agreeing to arbitrate in Singapore, as the election to arbitrate in another country alone does not demonstrate the intent to waive sovereign immunity. *See Creighton*, 181 F.3d at 122-23. Critically, the Contract between Strategic Tech and the ROC did not provide for the waiver of sovereign immunity, did not provide for arbitration or entry of judgment in the United States, and did not provide for the application of U.S. law.

Strategic Tech cites two cases from this Court in support of its contention that the agreement to arbitrate in another country implies the waiver of sovereign immunity in the United States — *Energoinvest DD v. Democratic Republic of Congo*, 355 F. Supp. 2d 9, 11 (D.D.C. 2004) and *Birch Shipping Corp. v. Embassy of United Republic of Tanzania*, 507 F. Supp. 311, 312 (D.D.C. 1980). These cases are not persuasive. *Birch* is distinguishable because in that case Tanzania had agreed to arbitration and entry of judgment in New York. 507 F. Supp. at 311. Here, the ROC did not agree to arbitration or entry of judgment in the United States. The court in *Energoinvest*, in the absence of any appearance by the defendant, broadly interpreted the implied-waiver provision broadly and did not mention *Creighton*, which is controlling authority. 355 F. Supp. 2d at 11-12. *Creighton* is clear — the election to arbitrate in another country alone does not demonstrate the intent to waive sovereign immunity. 181 F.3d at 123.

─────────────

[5] Singapore is a signatory to the New York Convention. Reply at 3.

Strategic Tech also argues, without authority, that the ROC implicitly waived sovereign immunity by agreeing to arbitrate, and to be bound by such arbitration, in "multiple fora" under the laws of the applicable fora. Pl.'s Opp. at 15. However, the "multiple fora" referred to are only Singapore and the ROC; the United States is not an agreed forum under the Contract. *See id.*, Raynes Decl. Ex. A, Contract ¶ 25.2 (the ROC agreed to arbitrate in Singapore, if it initiated the arbitration, and in the ROC, if Strategic Tech initiated the arbitration). In no way does this fact pattern implicate a waiver of sovereign immunity permitting the ROC to be sued in the United States. The implied-waiver exception must be construed narrowly, and it does not apply under the circumstances of this case.

### B.  Commercial-Activity Exception

A foreign state is not immune from suit under FSIA where the suit is based on certain forms of commercial activity.

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case —
>
>> (2) in which the action is *based upon* a commercial activity carried on in the United States by the foreign state; *or upon* an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; *or upon* an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2) (emphasis added).

The Supreme Court instructs that a lawsuit is "based upon" the elements that prove the plaintiff's claim. *Saudi Arabia*, 507 U.S. at 357 (1993). Further, courts have determined that the commercial-activity exception imposes a nexus requirement:   To determine whether a foreign nation's commercial activities are sufficient to deprive it of immunity, a court must determine (1)

-7-

whether there is a sufficient nexus between the commercial activity and the United States and (2)

whether there is a sufficient nexus between the commercial activity and the subject matter of the

cause of action. *Federal Ins. Co. v. Richard I. Rubin & Co., Inc.*, 12 F.3d 1270, 1288 (3d Cir. 1993).

The nexus requirement mandates that the foreign state's commercial acts be tied to the United States

and that such commercial acts form the basis of the plaintiff's cause of action. *Tubular Inspectors,*

*Inc. v. Petroleos Mexicanos*, 977 F.2d 180, 184 (5th Cir. 1992); *accord Stena Rederi AV v. Comision*

*de Contratos del Comite Ejecutivo General del Sindicato Revolucionario de Trabajadores*

*Petroleros de la Republica Mexicana*, 923 F.2d 380, 386-88 (5th Cir. 1991).

Strategic Tech argues that the commercial-activities exception applies because its

cause of action for recognition of the Judgment "concerns [the] ROC's commercial activities in some

way." Pl.'s Opp. at 17. More specifically, Strategic Tech argues:

> The Amended Complaint alleges that Strategic Tech has obtained a
> judgment — arising out of the ROC's commercial activity — which
> it wishes to domesticate and enforce. It alleges the factual requisites
> for enforcement of such judgments. It alleges that D.C. law creates
> a right to recognize such judgements. And finally it alleges that the
> purpose of the cause of action — its nexus to U.S. commercial
> activity — is to allow execution on available U.S. assets (i.e.,
> including those arising from the ROC's commercial activities).

*Id*. at 17-18 (citations to Am. Compl. omitted). In other words, Strategic Tech asserts that the

jurisdictional nexus requirement is met because the underlying Judgment arose from the ROC's

commercial activity and this suit seeks to enforce the Judgment against the ROC's assets in the

United States, assets that arose from different ROC commercial activity.

Strategic Tech has not pointed to a sufficient jurisdictional nexus in this case. The

commercial activity that provides the jurisdictional nexus must be the same activity on which the

lawsuit is based. *Federal Ins. Co.*, 12 F.3d at 1286; *Tubular Inspectors*, 977 F.2d at 184. This test

is not met here.  First, the claim on which this suit is based is a claim for the enforcement of a foreign judgment.  The parties agree that the elements of such a claim are: (1) the Singapore Court had personal jurisdiction over the ROC; (2) the Singapore Court  proceeding had sufficient due process safeguards, such as notice, a hearing, a right to counsel, a right to present evidence and confront witnesses, and a right to appeal the decision; and (3) a final, fully enforceable judgment exists under the laws of Singapore.  Reply at 9-10; *see also* Pl.'s Opp. at 17.  The elements of such a claim relate to whether there was  due process in the proceeding before the Singapore Court and whether its resulting Judgment can be enforced by a U.S. court.  None of the elements of that claim relates to the ROC's commercial activity.  Moreover, while the underlying Judgment allegedly concerned the ROC's commercial activity, there are no allegations that this commercial activity in any way involved or was connected to the United States.

The Second Circuit dealt with analogous circumstances in *Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.*, 204 F.3d 384 (2d Cir. 2000).  In *Transatlantic*, the court found that sovereign immunity barred suit by the assignee of a foreign judgment against the judgment debtor, a foreign trade corporation that was an instrumentality of the People's Republic of China.  Even though the judgment creditor in *Transatlantic* sought to enforce a judgment on an underlying contract that required payment into a bank account in New York, the court held that there was no jurisdiction under the commercial-activities exception because the acts upon which the judgment was based were not connected to a commercial activity with a direct effect in the United States.

> For even assuming that foreign judgments, or the assignment of them, can ever satisfy the "based upon" requirement, if the acts upon which the assigned judgments are themselves grounded do not meet the "based upon" requirement of § 1605(a)(2) of the FSIA — i.e., where

> they are not acts taken in connection with a commercial activity that caused a direct effect in the United States — an action to enforce the foreign judgments in U.S. courts must fail for lack of subject matter jurisdiction.

*Id*. at 390-91.  Because Strategic Tech failed to allege a sufficient jurisdictional nexus with the United States, the commercial-activities exception to sovereign immunity does not apply, and the ROC is immune from suit in the United States.

## IV.  CONCLUSION

Accordingly, the ROC's motion to dismiss [Dkt. #14] will be granted.  A memorializing order accompanies this Memorandum Opinion.


Date:  May 10, 2007                    _____/s/_____
                                       ROSEMARY M. COLLYER
                                       United States District Judge